ROGER YOUNG

v.

NEW HAMPSHIRE INDEMNITY COMPANY, INC. & a.

December 26, 1980

*Upton, Sanders & Smith*, of Concord (*John F. Teague* orally), for the plaintiff.

*Hall, Morse, Gallagher & Anderson*, of Concord (*Robert E. K. Morrill* orally), for the defendant.

DOUGLAS, J.   In this insurance coverage case we must determine whether the plaintiff Roger Young is an "executive officer," thereby requiring the defendant New Hampshire Indemnity Company to defend an action brought by a fellow employee against him. We hold that he is.

Mrs. Ruth W. Holmes was injured by a hydraulic press while employed at International Packings Corporation in Bristol, New Hampshire. After collecting workmen's compensation, she brought an action in July 1978 against Roger Young, a fellow employee. New Hampshire is one of only fourteen states that permit such actions. *Stevens v. Lewis*, 118 N.H. 367, 368, 387 A.2d 637, 638 (1978). *See* RSA 281:12 (Supp. 1979). As did the plaintiff in the *Stevens* case, Mrs. Holmes alleged that Young was in charge of plant safety and that he breached that duty by failing to provide a safe place for her to work.

The insurance carrier denied coverage and Young filed a petition for declaratory judgment under RSA 491:22. The Master, *Robert A. Carignan*, Esq., ruled in the plaintiff's favor. *DiClerico,*

J. approved the recommendation that the carrier was to provide coverage for Mrs. Holmes' action. This appeal followed.

International Packings Corporation (IPC) is a New Hampshire company that makes rubber seals and parts primarily for the automotive industry. The manufacturing process at the plant in Bristol, where Roger Young serves as plant manager, involves the use of many large, complex machines. Young's managerial duties place upon him the responsibility to supervise directly three foremen and forty employees. As safety officer, Young is head of the safety committee and is responsible for compliance with regulations of the United States Occupational Safety & Health Administration and the United States Environmental Protection Agency. Young also was involved in the purchase and construction of other plants. On his own signature, he has bound the corporation to contracts with machinery contractors and other tradesmen.

The retired treasurer of IPC, James Clowes, purchased the 121-page insurance policy at issue. Section II provides as follows:

"PERSONS INSURED

Each of the following is an insured under this insurance to the extent set forth below:
. . .
(c) if the named insured is designated in the declarations as other than an individual, partnership or joint venture, the organization so designated and *any executive officer*, director or stockholder thereof while acting within the scope of his duties as such;" (Emphasis added.)

Clowes stated his opinion that an "executive officer" would have, as did Young, authority "to hire, fire, get things done in his department." It was Clowes' belief that the policy he purchased covered Young, and the president of IPC also testified that he expected the same.

The policy does not define "executive officer." The definition of "executive officer" in WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 794–95 (Unabridged 1961) is "the military officer second in command of a company or similar organization." Obviously, that will not aid us. Using the same dictionary, under the word "executive" we find: "one who holds a position of administrative or managerial responsibility in a business or other organization." *Id.* at 794. A "corporate officer," on the other hand, is a more precise and narrow definition tied to the corporate charter and bylaws. 2

W. FLETCHER, CYCLOPEDIA OF THE LAW OF PRIVATE CORPORA-
TIONS §§ 269–70 (rev. perm. ed. 1969).

It is little wonder that some courts have concluded that the
insurance policy term "executive officer" is ambiguous. *E.g.,*
*Guillory v. Aetna Insurance Company,* 415 F.2d 650, 652 (5th Cir.
1969); *Holm v. Mutual Service Cas. Ins. Co.,* 261 N.W.2d 598, 600
(Minn. 1977); *see Hadrick v. Diaz,* 302 So. 2d 345, 352 (La. App.
1974); *Berry v. Aetna Casualty & Surety Company,* 240 So. 2d 243,
246 (La. App. 1970), *cert. denied,* 401 U.S. 1005 (1971). The *Berry*
case involved a suit by a fellow employee against a plant manager
and a personnel director, among others. At the outset, the Court
observed,

> "It is clear the term 'executive officer' covers something
> more than, and is not restricted to, 'corporate officers'. If
> not, certainly the insurance company . . . would have
> used that terminology."

*Berry v. Aetna Casualty & Surety Company, supra* at 246.

■ ■ We recently adopted the majority rule that in "cases
where policy language is ambiguous or when separate clauses lend
themselves to conflicting interpretations, . . . ambiguous language
is construed against the insurer." *Trombly v. Blue Cross/Blue
Shield of New Hampshire-Vermont,* 120 N.H. 764, 423 A.2d 980 (1980).
We did so on the basis that "[o]ne of the most frequently
articulated rationales for the rule is based on the fact that it is the
insurer who controls the language of the policy and, therefore, any
resulting ambiguity should be resolved in favor of the insured." *Id.*
at 771, 423 A.2d at 984. Having adopted the majority rule, we apply it
in this case and uphold the decision below requiring the carrier to
defend Mr. Young.

*Affirmed.*

All concurred.