Cheshire
No. 81-272
No. 81-289

## ROYAL GLOBE INSURANCE COMPANIES

v.

## PHILIP L. FLETCHER & a.

March 28, 1983

*Augustine J. McDonough P.A.*, of Manchester (*Michael B. O'Shaugh-nessy* and *Mark L. Mallory* on the brief, and *Mr. O'Shaughnessy* orally), for Royal Globe Insurance Companies.

*Brown & Nixon P.A.*, of Manchester (*Frank E. Kenison* on the brief and orally), for Philip L. Fletcher and Wilma L. Fletcher.

*Brighton, Fernald, Taft & Hampsey P.A.*, of Peterborough (*John R. Falby, Jr.*, on the brief and orally), for Concord General Mutual Insurance Company.

BROCK, J.  These appeals involve a petition for declaratory judg-ment (RSA 491:22) by which the plaintiff, Royal Globe Insurance Companies, seeks a judicial determination that Concord General Mutual Insurance Company, rather than it, is required to provide coverage for a 1974 accident. The Trial Court (*Contas, J.*) entered a decree under which both companies would have to afford coverage, and they appealed. We affirm that portion of the decree requiring Royal Globe to provide coverage and reverse that portion requiring Concord General to provide coverage.

This case arises out of an accident in 1974 in which Philip L. Fletcher, an employee of Cheshire Landscaping Service, Inc. of Keene was injured by a tractor/backhoe driven by Albert F. Hurd, a

fellow employee. Cheshire Landscaping was insured by Royal Globe. Mr. Hurd was insured under two Concord General Mutual Insurance Company policies. John Kunze, president of Cheshire Landscaping, was supervising the job site at the time of the accident and was named, along with Mr. Hurd, in the underlying action filed by Philip and Wilma Fletcher in 1978.

The parties' agreed statement of facts and the language of the insurance policies at issue form the basis for this appeal. On November 13, 1974, Kunze, Hurd and Fletcher were working at the G.T.E. Sylvania plant in Hillsborough on a Cheshire Landscaping job. The injuries occurred when a tractor with backhoe attachment, operated by Hurd and owned by Cheshire Landscaping, struck Fletcher while he was directing Hurd from the ground. It is agreed that Kunze was in charge of supervising the job site when the accident occurred. At the time of the accident, Cheshire Landscaping had in effect two insurance policies issued by Royal Globe: A workmen's compensation and employer's liability policy and a comprehensive general liability and special multi-peril policy with a motor vehicle liability endorsement bringing it within the then-controlling Financial Responsibility Act, Laws 1971, 456:1 (now codified at RSA 259:61, I).

The trial court ruled, and no party now disputes, that Royal Globe had no liability under the workmen's compensation and employer's liability policy. The court determined, however, that Royal Globe was obligated to provide coverage for Kunze and Hurd under the comprehensive general liability and multi-peril policy.

Section I, Coverage C of that policy provides that Royal Globe "will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury . . . arising out of . . . all operations necessary or incidental to the business of the named insured. . . ." Section II(c) of the policy states that this coverage is provided not only for the named insured, Cheshire Landscaping, but also for "any executive officer . . . thereof while acting within the scope of his duties as such." Although Royal Globe acknowledges that Kunze was an executive officer of the corporation, Royal Globe maintains that at the time of the accident, he was not acting within the scope of his duties *as such*. Royal Globe therefore disputes the trial court's ruling that it must provide coverage to Kunze under this section of the contract.

The policy does not define "executive officer." *See Young v. N.H. Indem. Co., Inc.*, 120 N.H. 882, 883, 424 A.2d 205, 206 (1980). A review of the parties' agreed facts and the evidence at trial, however, fully supports the trial court's ruling that Kunze was acting

within the scope of his duties as an executive officer when the accident occurred.

After becoming an officer and president of Cheshire Landscaping in 1973, Kunze assumed supervisory and managerial functions. At trial, Mr. Kunze stated that he was in fact the company's only supervisor and that, at the time of the accident in question, he was in charge of the job site. Mr. and Mrs. Fletcher alleged in their underlying action that Kunze breached precisely *this* supervisory duty by failing to ensure for Fletcher's safety on the job site. *See Young v. N.H. Indem. Co., Inc.*, 120 N.H. at 883, 424 A.2d at 206; *Stevens v. Lewis*, 118 N.H. 367, 369, 387 A.2d 637, 638 (1978).

■ We agree with the trial court that this case is analogous to the situation in *Young*, where we held that a policy provision identical to the one at hand covered a fellow employee who was alleged to have breached his duty as plant manager to provide a safe workplace to the other employees. The same result is appropriate in the present case, where the party to be covered is the president of a small company whose regular, acknowledged duties since becoming president have included his presence, involvement at and supervision of company work sites.

We note, in addition, that as in *Young*, the term "executive officer" is ambiguous, and is therefore to be construed against the insurer. *Id.* at 883–84, 424 A.2d at 206–07; *see Trombly v. Blue Cross/Blue Shield*, 120 N.H. 764, 772, 423 A.2d 980, 984 (1980).

■ We next turn to the trial court's ruling that Royal Globe must provide coverage to Mr. Hurd for up to $20,000, the statutory limit then provided under our Financial Responsibility Act, Laws 1971, 456:1. As a preliminary matter, we agree with the trial court's conclusion, barely disputed on appeal, that the tractor with backhoe attachment is a "motor vehicle" for the purposes of the Financial Responsibility Act. *See American Mut. &c. Ins. Co. v. Chaput*, 95 N.H. 200, 204, 60 A.2d 118, 121 (1948). Royal Globe nonetheless contends that it has no liability in this case because Fletcher is not a person covered by the terms of the Act.

The Act provides coverage for damages to any person "other than the insured, or employees of the insured actually operating the motor vehicle or such other person responsible as aforesaid . . ." *See* Laws 1971, 456:1 (now RSA 259:61). Royal Globe argues that because Fletcher was giving Hurd directions in order to prevent him from removing too much pavement, Fletcher should be considered as having been "responsible as aforesaid" for the operation of the tractor, and therefore excluded from recovery under the Act.

██ ██ This court has, however, stated previously that this statutory language excludes only a person who is *actually operating* the motor vehicle. *Merchants &c. Cas. Co. v. Tuttle*, 98 N.H. 349, 354, 101 A.2d 262, 265 (1953). Mr. Fletcher was not actually operating the backhoe; the trial court therefore correctly ruled that Royal Globe must provide coverage for Mr. Hurd up to the limits of its statutory liability.

We next consider whether there is coverage under either of the policies issued by Concord General Mutual Insurance Company to Albert F. Hurd as the named insured. At the time of the accident, Mr. Hurd had in effect a comprehensive personal liability policy and a merit-rated family combination automobile liability policy. It is not now disputed that Concord General need not provide coverage to Mr. Hurd under the comprehensive personal liability policy, because the contract excludes coverage for liability "arising out of business pursuits of any insured." *See Hanover Ins. Co. v. Ransom*, 122 N.H. 609, 611–12, 448 A.2d 399, 400–01 (1982); *Berkshire Mut. Ins. Co. v. LaChance*, 115 N.H. 487, 489, 343 A.2d 642, 643 (1975).

The trial court ruled, nevertheless, that Concord General must provide coverage to Mr. Hurd under his family automobile liability policy. The policy *exclusions* at issue state that the policy does not apply:

> "(f) To bodily injury to any fellow employee of the insured injured in the course of his employment if such injury arises out of the use of an automobile in the business of his employer, but this exclusion does not apply to the named insured with respect to injury sustained by any such fellow employee;
>
> . . . .
>
> (h) To a non-owned automobile while maintained or used by any person while such person is employed or otherwise engaged in
>> (1) the automobile business of the insured or of any other person or organization,
>> (2) any other business or occupation of the insured. . . ."

Concord General relies on exclusion (h)(2) to avoid coverage, arguing that Mr. Hurd was driving a non-owned automobile while employed or engaged in "any other business or occupation of the insured."

The trial court concluded that an insured's use of a non-owned automobile was excluded only when the "business or occupation" of the insured was one *belonging to or controlled by* the insured. Because Mr. Hurd did not own or control Cheshire Landscaping, the

trial court reasoned that Concord General had to provide coverage. The trial court purported to find support for its conclusion in the fact that exclusion (f) explicitly extends coverage to any named insured whose use of an automobile in the business of his employer injures a fellow employee. The court ruled that exclusion (f) appeared to extend coverage to an insured such as Mr. Hurd, while exclusion (h)(2) arguably, but ambiguously, *excluded* Mr. Hurd from coverage. The court reasoned that, as an ambiguous and conflicting policy provision, exclusion (h)(2) must be construed against the insurer and that Concord General must provide coverage. We do not agree.

■■ We find, to the contrary, that exclusion (h)(2) clearly applies to the use of *non-owned* rather than *owned* automobiles. Further, the exclusion clearly precludes coverage where a non-owned automobile is used in any "business or occupation of the insured." In the present case, Mr. Hurd was using the non-owned vehicle, the tractor/backhoe, in connection with his occupation as an employee of Cheshire Landscaping. We do not agree with the trial court's conclusion that the term "business or occupation of the insured" in the exclusion means that the exclusion only applies to those businesses or occupations that are "owned" or "controlled" by the insured. Such an interpretation is unduly restrictive and does violence to not only the plain meaning of the language used, but also its commonly accepted usage and interpretation. *See* Annot., 85 A.L.R.2d 502 (1962). For these reasons, we hold that the trial court erred in ruling Concord General is obligated to provide coverage for the accident in which Fletcher was injured.

In light of our holding that Concord General has no obligation to provide coverage for its insured in this matter, we need not address other issues raised on this appeal concerning either the extent of its coverage or its insured's failure to comply with the notice provisions of the policy.

*Affirmed in part and reversed in part.*

KING, C.J., did not participate; the others concurred.