Hillsborough
No. 86-294

HARRY SMITH

v.

LIBERTY MUTUAL INSURANCE COMPANY
AND
ESTATE OF NELSON J. ESTABROOK

December 4, 1987

118

*Devine, Millimet, Stahl & Branch P.A.*, of Manchester (*E. Donald Dufresne* on the brief and orally), for the plaintiff, Harry Smith, and the defendant Estate of Nelson J. Estabrook.

*James S. Yakovakis P.A.*, of Manchester (*James S. Yakovakis* on the brief and orally), for the defendant Liberty Mutual Insurance Company.

SOUTER, J.  This appeal is from a declaratory judgment of the Superior Court (*Thayer*, J.), *see* RSA 491:22, construing a corporation's liability policy that includes coverage for an "executive officer" as an unnamed insured. The trial court sustained the insurer's denial of coverage to the corporation's plant manager, on the grounds that the quoted term is not ambiguous, *see Commercial Union Assurance Cos. v. Town of Derry*, 118 N.H. 469, 471, 387

A.2d 1171, 1172 (1978), *rev'd in part, American Home Assurance Co. v. Fish,* 122 N.H. 711, 715, 451 A.2d 358, 360 (1982), that the coverage claimant is therefore not entitled to the benefit of the general rule that ambiguous policy terms are to be construed against the insurer, and that the parties to the contract did not intend the quoted term to provide the coverage in question. We modify the *Commercial Union* concept of policy ambiguity, conclude that the policy term is ambiguous, hold that the evidence was incompetent to demonstrate that the disputed coverage was not intended, and reverse.

In *Estabrook v. American Hoist & Derrick, Inc.,* 127 N.H. 162, 498 A.2d 741 (1985), this court held that the workers' compensation act did not bar wrongful death actions by the Administratrix of the Estate of Nelson Estabrook against the decedent's fellow employees. One such action, against Harry Smith, underlies this proceeding. *See id.* at 166, 498 A.2d at 743; *see also Estabrook v. Wetmore,* 129 N.H. 520, 529 A.2d 956 (1987). At the relevant time, Smith was the manager of an asphalt plant owned by Lane Construction Company at which the decedent was killed. Smith had been appointed to his position by the chairman of Lane's board of directors and was Lane's senior employee in New Hampshire. He had authority to contract for the purchase of supplies and certain equipment; he was authorized to hire, fire and supervise the plant's fifty employees; and he had overall responsibility for the safety, maintenance and operation of the Manchester plant.

On the date of Estabrook's death, a contract of liability insurance in effect between Lane and Liberty Mutual Insurance Company provided coverage for "any executive officer, director or stockholder [of the named insured, Lane,] while acting within the scope of his duties as such." In the trial court, both Smith and the administratrix argued that the policy covered Smith because a plant manager was an "executive officer." They relied on *Young v. New Hampshire Indemnity Co., Inc.,* 120 N.H. 882, 424 A.2d 205 (1980), in which this court held that an identical policy provision was both ambiguous and susceptible of being read to provide coverage for "one who holds a position of administrative or managerial responsibility in a business or other organization." *Id.* at 883, 424 A.2d at 206 (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 794 (Unabridged 1961)). Following the rule of *Trombly v. Blue Cross/Blue Shield,* 120 N.H. 764, 423 A.2d 980 (1980), that an ambiguity in an insurance policy is to be construed in favor of the insured and against the insurer, we held in *Young* that use of the term "executive officer" extended coverage to a plant

manager with responsibilities and powers virtually identical to those of Smith as manager of Lane's plant.

Arguably, however, one factual difference distinguishes *Young* from the case before us. In *Young*, the spokesman for the corporate policy-holder took the position that the manager was covered under it. *Young v. N.H. Indem. Co., Inc., supra* at 883, 424 A.2d at 206; see *Trombly v. Blue Cross/Blue Shield, supra* at 767, 423 A.2d at 982 (no evidence that employer who purchased group health policy had ever agreed to the reduction of coverage that would have resulted from insurer's interpretation of policy language). The employer in the instant case, however, sided with the insurer. Lane's corporate officer who procured the insurance, Stapleton, testified that he had never found anything ambiguous in the meaning or application of the term "executive officer" and had not intended to cover the plant manager by the inclusion of that language in the policy. While Stapleton admitted that he had never discussed the meaning of the term with the insurer, he stated that he interpreted the phrase to provide coverage only to an officer of the corporation who was both elected by the board of directors and a member of the corporation's executive committee.

This testimony loomed large before the trial court, which concluded that "executive officer" as used in the policy now in question presented no such ambiguity as was found in *Young*:

> "There is no evidence to indicate that either party to the contract [*i.e.*, Lane or Liberty Mutual] felt that the provision relating to executive officer coverage was ambiguous. On the contrary, the evidence is that the company intended [only to] cover executive committee members and not the plaintiff[ ]. Therefore, as to the parties to the contract no ambiguity exists and, accordingly, the plaintiff cannot rely on the principle of law adopted in *Trombly*, of construing ambiguity against the insurer and in favor of the insured."

■ In so reasoning, the trial judge alluded to three significant rules bearing on the interpretation of insurance policy language and the resolution of disputes about coverage. The first is the general rule that policy ambiguity will be construed in favor of the insured and against the insurer. *Trombly v. Blue Cross/Blue Shield, supra* at 771–72, 423 A.2d at 985. The application of this first rule depends on the second, defining ambiguity for the purpose of policy construction. It is clear that the trial judge had in mind this court's definition of policy ambiguity as language that gives rise to

reasonable disagreement between the parties to the insurance contract, and about which they actually disagree. Thus, a "clause is ambiguous when the contracting parties reasonably differ as to its meaning." *See* 3 A. CORBIN, CONTRACTS § 543 A (Supp. 1971); *Commercial Union Assurance Cos. v. Town of Derry*, 118 N.H. at 471, 387 A.2d at 1172, *cited in V & V Corp. v. American Policy-holders' Ins. Co.*, 127 N.H. 372, 380, 500 A.2d 695, 700–01 (1985). The trial court correctly followed this definition in distinguishing *Young* and finding no ambiguity in the circumstances of this case.

The third rule underlying the trial court's discussion recognizes the admissibility of parol evidence to resolve ambiguity in a written agreement. It is exemplified in *Town of Epping v. St. Paul Fire & Marine Ins. Co.*, 122 N.H. 248, 444 A.2d 496 (1982), which held that when prior dealings of the parties to the insurance contract indicate an intention to provide no coverage by the language in dispute, the intention of the parties will prevail over *Trombly's* general rule of strict construction against the insurer. The trial judge referred to the evidence before him as establishing Lane's and Liberty Mutual's intentions to provide no coverage for a plant manager as an "executive officer."

Although none of the parties before us questions the soundness of the *Trombly* rule as such, the appeal does entail challenges to *Commercial Union's* concept of policy ambiguity and to the evidentiary basis for the conclusion that *Trombly* is inapplicable here in any event, because the contracting parties intended no coverage for plant managers. Specifically, the appeal presents two issues: whether the concept of ambiguity, inherent in policy language or arising from its application, should be restated so that an unnamed insured who claims coverage may rely upon the *Trombly* rule, even when the insured contracting party actually agrees with the insurer that denies coverage; and, if so, whether Stapleton's testimony in this case was competent to support the conclusion under *Town of Epping* that Smith was not covered because the contracting parties had not intended to cover him.

In addressing the first question, we are mindful that Liberty Mutual does not generally challenge the right of an unnamed insured to enforce the contract embodied in the policy. *See Young v. N.H. Indem. Co., Inc.*, 120 N.H. 882, 424 A.2d 205 (unnamed insured as plaintiff). Nor does it specifically question the standing of such an insured to maintain an action on that contract independently of any action taken by the insured contracting party. *See id.* We also recognize, however, that if application of the *Trombly* rule for the benefit of an unnamed insured is to be

contingent on an actual disagreement between the insurer and the insured contracting party, then in reality the unnamed or other insured will have no practical chance to claim coverage under the ambiguity rule without the concurrence of the insured contracting party.

■■ We hold, rather, that the category of ambiguity subject to *Trombly*'s rule of construction should not be restricted to terms that reasonably and actually give rise to disagreement between the contracting parties, but should include all terms about the meaning or application of which reasonable disagreement between the contracting parties is possible. Any insured may therefore stand in the shoes of the insured contracting party, with the option to raise whatever claim the insured contracting party could assert on the particular insured's behalf, and subject to any response that would avail the insurer if the contracting party had actually brought such a claim.

The considerations that recommend this conclusion emerge when we consider two related questions. If an unnamed or other insured may claim coverage under *Trombly* on the basis of ambiguity that the insured contracting party denies, will the insurer be exposed to risks that it can not anticipate? If an unnamed or other insured could not raise such a claim without the concurrence of the insured contracting party, would the unnamed or other insured be exposed to a risk for which he could not plan ahead?

The answer to the first question is surely that the insurer is not placed in any disadvantageous position merely because an unnamed insured may derivatively claim coverage on the basis of an ambiguity that the insured contracting party may disclaim. So long as ambiguity is understood by reference to the potential for reasonable disagreement about the meaning or application of policy language, the insurer who writes a policy is in a position to charge a premium based on exposure that it may anticipate. That exposure may be gauged by reference to the policy language that the insurer chooses to use in the context of its dealings with the contracting party. The insurer is in a position to identify those who are likely to claim coverage, as well as the circumstances in which they are likely to claim it. The insurer may therefore assess the probability of reasonable disagreement in applying any given policy language to those circumstances, and if the insurer foresees such disagreement it may either change the language, or otherwise clarify the intent of the contracting parties, or take its chances. When the insurer chooses to take its chances, it can assess the risk that some

insured will claim coverage at some time in the future, and it can charge accordingly.

■ The answer to the second question is that a definition of policy ambiguity that would restrict possible coverage claims to claims espoused by the insured contracting party would expose an unnamed or other insured employee to the risk that his employer might see an advantage in siding with the insurer, and that is a risk that the unnamed or other insured could hardly evaluate in advance. It is regrettable, perhaps, that such an employer and his employee do not necessarily share identical interests in relation to the insurer. In this case, Lane's exposure is limited by the workers' compensation act, but Smith's is not. Smith needs coverage against common law liability, but Lane does not. Lane has to negotiate future policies to insure against the liability of corporate officers, but Smith does not. Although no one is claiming that the disparity of the respective interests of employer and employee has determined Lane's position in this case, there is no question that the differences in interest could affect an employer's position in dealing with the insurer. If the employer could bar the employee's coverage simply by agreement with the insurer after the fact, the employee who might otherwise reasonably rely upon and claim coverage as an unnamed or other insured would actually be covered only at the will of his employer after liability had been threatened. In the absence of a warning to this effect in the policy, however, such coverage at the employer's sufferance would clearly be inconsistent with the very object of a policy purporting to cover insureds in addition to the purchaser of the policy.

The alternative is to allow the unnamed insured employee to claim coverage on the basis of any ambiguity that the contracting party could claim in asserting such coverage, and we hold today that ambiguity must be understood in such a way as to permit the unnamed or other insured to do just that. The plant manager in this case may therefore contest the insurer's restrictive interpretation of "executive officer," and the term must be viewed as no less ambiguous than we held it to be on identical facts in *Young.*

■ With this, we turn to consider the second issue before us, for Liberty Mutual argues, in effect, that *Young* still is not the last word on the issue of coverage as it arises in this case. The insurer submits that even if "executive officer" is ambiguous and capable of covering the plant manager, the *Trombly* rule of construing the term against the insurer is not absolute, but may be displaced if the prior dealings between the contracting parties indicate their

intent to provide no coverage. *Compare Town of Goshen v. Grange Mut. Ins. Co.*, 120 N.H. 915, 424 A.2d 822 (1980) (ambiguous reference to coverage for liability arising from violations of rights of private occupancy of property must be construed against company so as to provide coverage for liability arising from violation of 42 U.S.C. § 1983) *with Town of Epping v. St. Paul Fire & Marine Ins. Co.*, 122 N.H. 248, 444 A.2d 496 (1982) (under virtually identical policy language, there is no coverage for liability under § 1983, when town rejected express proposals to provide it). Liberty Mutual correctly points out that, under *Town of Epping*, there may be ambiguity but no insurance when an understanding of no coverage is inferable from the contracting parties' prior dealings.

Liberty Mutual seeks to apply this rule on the basis of evidence given by Stapleton, Lane's agent in buying the insurance, who testified that he did not understand or intend the plant manager to be covered. Liberty Mutual submits that this is evidence of prior dealings, indicating an understanding and agreement that there should be no coverage for the manager, which is enough to satisfy *Town of Epping* and bar application of the *Trombly* rule of construing ambiguity against the insurer.

■■ Unfortunately for the insurer's position, however, Stapleton's testimony provides neither evidence of "dealings," nor evidence of dealings that were "prior," within the meaning of *Town of Epping*. Stapleton admitted that in his communications with the insurer at the time Lane purchased the policy, prior to Estabrook's death, they never discussed coverage for plant managers or the scope of "executive officer." This testimony stands in stark contrast to the facts found in *Town of Epping*, where town officials discussed coverage for § 1983 liability and expressly rejected it. At best, Stapleton's interpretation reflected nothing more than the previously unmanifested state of mind of one party's representative. Such a merely private understanding was entitled to no weight under our rule that a contract of uncertain meaning or application is to be construed under the objective standard of what a reasonable person would understand from the parties' external manifestations of intent at the time of contracting. *See Spaulding v. Concord Gen. Mut. Ins. Co.*, 122 N.H. 515, 516, 446 A.2d 1172, 1173 (1982); *Kilroe v. Troast*, 117 N.H. 598, 601, 376 A.2d 131, 133 (1977); *see also Smart v. Huckins*, 82 N.H. 342, 347, 134 A. 520, 523 (1926) (evidence of subsequent practical construction admissible). If, indeed, Stapleton's testimony were competent under *Town of Epping*, the unnamed coverage claimant would always be back at the mercy of the two contracting parties, and we have already observed that the

interest of the claimant's employer may not coincide with the interest of the claimant himself, who may be entitled to coverage on the objective theory of contract interpretation.

We therefore see no escape from the conclusion reached in *Young*. Because no subsidiary facts are in dispute, *see Spaulding v. Concord Gen. Mut. Ins. Co., supra* at 516, 446 A.2d at 1173 (trial court to find subsidiary facts), and because contract interpretation is ultimately an issue for this court, *Laconia Rod & Gun Club v. Hartford Acc. & Indemn. Co.*, 123 N.H. 179, 182, 459 A.2d 249, 250 (1983), we follow *Young* in concluding that any liability of the plant manager is subject to coverage under the "executive officer" clause, and we remand to the superior court for entry of a decree to that effect.

*Reversed and remanded.*

THAYER, J., did not sit; the others concurred.