Hillsborough
No. 89-439

GEORGE GAGNON, ADMINISTRATOR,
ESTATE OF JUDITH GAGNON

v.

NEW HAMPSHIRE INSURANCE COMPANY

April 13, 1990

*Law Office of Thomas E. Craig P.A.*, of Manchester (*H. Nina Bernard* on the brief and orally), for the plaintiff.

*Wiggin & Nourie*, of Manchester (*Gordon A. Rehnborg, Jr.*, and *Doreen F. Connor* on the brief, and *Mr. Rehnborg* orally), for the defendant.

JOHNSON, J.   Plaintiff brought this declaratory judgment action against defendant to determine the extent of defendant's obligation to provide insurance coverage for Sally Wade, a defendant in plaintiff's underlying wrongful death action. On August 25, 1989, the Superior Court (*Pappagianis*, J.) held that defendant is not obligated to provide Wade with coverage. This appeal followed and, for the reasons stated below, we affirm.

During the summer of 1986, Camp Allen, Inc. employed Judith Gagnon, the decedent, as a camp counselor and Sally Wade as the camp "Waterfront Coordinator." On July 7, 1986, Wade was on duty

as the pool lifeguard, and Gagnon was participating in a "one-hour staff free swim." While Wade was momentarily away from the pool, Gagnon suffered an epileptic seizure and nearly drowned. As a result of the accident, Gagnon lapsed into a coma and eventually died.

On July 9, 1986, Camp Allen filed an "Employer's First Report of Injury" with the State Department of Labor. Later, by letter of November 7, 1986, the attorney for George Gagnon, the guardian of Judith Gagnon, wrote the adjustors that "the claim for compensation benefits is withdrawn, without prejudice." Plaintiff then brought a tort action against Wade, Camp Allen, and Camp Allen director Wayne Vaughn. Also on November 7, 1986, plaintiff commenced this declaratory judgment action against New Hampshire Insurance Company, seeking coverage for Wade under the liability insurance policies defendant sold to Camp Allen.

The two insurance policies at issue here are a general liability policy (including its broad form extension endorsement) and a commercial liability umbrella policy. The parties agree that coverage under the umbrella policy is directly tied to coverage under the general liability policy, and our discussion will therefore be limited to the general liability policy. The parties also agree that Wade is entitled to coverage under the general liability policy only if she qualifies as an "executive officer," or if Gagnon's injury did not "arise out of or in the course of her employment."

The pertinent provisions of the insurance policy are as follows:

"II. *PERSONS INSURED*

Each of the following is an *insured* under this insurance to the extent set forth below:

. . .

(c) if the *named insured* is designated in the declarations as other than an individual, partnership or joint venture, the organization so designated and any executive officer, director or stockholder thereof while acting within the scope of his duties as such;

. . .

"X. *ADDITIONAL PERSONS INSURED*

As respects *bodily injury, property damage* and *advertising injury* and personal injury coverages, under the provision "Persons Insured", the following are added as *insureds*:

(2) Employee—Any employee (other than executive offi-
cers) of the *named insured* while acting within the
scope of his duties as such, but the insurance afforded
to such employee does not apply:

   (a) to *bodily injury* or *personal injury* to another em-
ployee of the *named insured* arising out of or in the
course of his employment;"

(Emphasis in the original policy.)

Camp Allen also purchased a workers' compensation insurance
policy from defendant. In order to receive coverage under this policy
for employee injury claims, "[t]he bodily injury must arise out of and
in the course of the injured employee's employment. . . ." The phrase
"arising out of and in the course of . . . employment" is also the
language used in RSA 281-A:2, XI (Supp. 1989) to define those inju-
ries compensable by workers' compensation benefits.

The trial court held that "New Hampshire Insurance Company is
not obligated to provide Sally Wade with coverage" because she was
not a Camp Allen executive officer and because Gagnon's injury
arose out of *and* in the course of her employment with Camp Allen.
Plaintiff appeals, arguing: (1) Wade was an "executive officer" at
Camp Allen; (2) Gagnon's injury did not "arise out of" or "in the
course of" her employment at Camp Allen; (3) workers' compensa-
tion cases should not dictate our treatment of the phrase "arising out
of and in the course of employment"; and (4) the testimony of Anne
Crane, a workers' compensation expert, should not have been admit-
ted at trial.

I. *Executive Officer*

■ "[C]ontract interpretation," such as interpretation of the
term "executive officer" in an insurance policy, "is ultimately an is-
sue for this court . . . ." *Smith v. Liberty Mut. Ins. Co.*, 130 N.H. 117,
125, 536 A.2d 164, 168 (1987) (citation omitted). We hold that the trial
court correctly determined, as a matter of law, that Wade was not an
executive officer of Camp Allen.

This court has previously interpreted the phrase "executive offi-
cer" as it appears in a commercial liability policy. Both *Smith supra*
and *Young v. N.H. Indem. Co., Inc.*, 120 N.H. 882, 424 A.2d 205
(1980) involved insurance provisions identical to Section II, Persons
Insured, of defendant's insurance policy, quoted above. In *Smith*, a
plant manager's insurance coverage under the "executive officer"
provision was called into question. "He had authority to contract for

the purchase of supplies and certain equipment; he was authorized to hire, fire and supervise the plant's fifty employees; and he had over-all responsibility for the safety, maintenance and operation of the Manchester plant." *Smith v. Liberty Mut. Ins. Co., supra* at 119, 536 A.2d at 165. We held that the plant manager was eligible for insurance coverage as an executive officer. *Smith, supra* at 125, 536 A.2d at 168.

*Young* also involved a plant manager's eligibility for insurance coverage as an "executive officer."

> "Young's managerial duties place upon him the responsibility to supervise directly three foremen and forty employees. As safety officer, Young is head of the safety committee and is responsible for compliance with regulations of the United States Occupational Safety & Health Administration and the United States Environmental Protection Agency. Young also was involved in the purchase and construction of other plants. On his own signature, he has bound the corporation to contracts with machinery contractors and other tradesmen."

*Young v. N.H. Indem. Co., Inc., supra* at 883, 424 A.2d at 206. Similar to the result in *Smith,* we held that Young was an executive officer for purposes of the insurance policy. *Young, supra* at 884, 424 A.2d at 207.

Wade's role as Waterfront Coordinator contrasts sharply with those of the two plant managers described above. Although she was responsible for the safety of the employees and campers using the camp pool, she had no authority to bind Camp Allen to contracts, to purchase supplies, or to hire and fire employees. She supervised no one, and she had no dealings with State or federal safety agencies. Her duties were limited to lifeguarding, administering basic swimming tests to employees, and compiling a list of pool safety rules from the previous summer's rules. Wade was not an executive officer under the *Smith* and *Young* decisions.

■ Plaintiff argues that the term "executive officer" is ambiguous and that it therefore should be construed in favor of coverage for Wade. It is true this court has held that the term "executive officer" is ambiguous. *Young v. N.H. Indem. Co., Inc.,* 120 N.H. at 884, 424 A.2d at 206. We have also adopted the rule that in "cases where policy language is ambiguous or when separate clauses lend themselves to conflicting interpretations, . . . ambiguous language is con-

strued against the insurer." *Trombly v. Blue Cross/Blue Shield,* 120 N.H. 764, 770, 423 A.2d 980, 984 (1980).

■ These rules of construction, however, do not help plaintiff's case. "Ambiguity" is "the condition of admitting of two or more meanings, of being understood in more than one way . . . ." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 66 (Unabridged 1961). In order to take advantage of our rules of construction, plaintiff must show that Wade can be classified as an "executive officer" under any one of the possible meanings of the term. For example, if "executive officer" is ambiguous because the term can fairly be understood to mean "one who holds a position of administrative *or* managerial responsibility in a business or other organization," *id.* at 794 (Unabridged 1961) (emphasis added), Wade is entitled to coverage if plaintiff can show that her position as Waterfront Coordinator was one of *either* administrative *or* managerial responsibility. Plaintiff has failed to show that Wade was an executive officer under *any* possible definition of the term. We therefore hold that Wade is not entitled to coverage as an executive officer. *See City of Manchester v. General Reinsurance Corp.,* 127 N.H. 806, 809, 508 A.2d 1063, 1065 (1986) ("We will not force language to create an ambiguity in order to resolve it against the insurer, when it is clear from contextual analysis that no coverage was intended.").

## II. *Arising out of or in the Course of Employment*

■ The question whether an employee's injury arose out of or in the course of her employment is one of fact. *See Murphy v. Town of Atkinson,* 128 N.H. 641, 646, 517 A.2d 1170, 1173 (1986). Therefore, the trial court's findings on this issue are entitled to stand unless plaintiff demonstrates that they lack support in the evidence. *Id.*

In *Murphy,* we set forth this court's test for determining whether an employee's injury arose out of and in the course of employment. To meet this standard, one must prove

"(1) that the injury arose out of employment by demonstrating that it resulted from a risk created by the employment; and

(2) that the injury arose in the course of employment by demonstrating that

(A) it occurred within the boundaries of time and space created by the terms of employment, and

(B) it occurred in the performance of an activity related to employment, which may include a personal activity if

reasonably expected and not forbidden or an activity of mutual benefit to employer and employee."

*Murphy v. Town of Atkinson, supra* at 645–46, 517 A.2d at 1172–73 (citations omitted).

The trial court had sufficient evidence before it to find that Gagnon's injury arose both out of *and* in the course of her employment at Camp Allen. First, the injury resulted from a risk created by her employment and therefore arose out of her employment. The camp pool in which Gagnon nearly drowned was available to camp employees during their "one-hour staff free swim." Gagnon would not have been in the pool at the time of her seizure had it not been for her employment at Camp Allen.

▪ Second, Gagnon's injury occurred within the boundaries of time and space created by the terms of employment. The pool was located on camp property and the "one-hour staff free swim" was scheduled during the course of the employees' work days. The injury also occurred in the performance of an activity related to employment, since it was a personal activity reasonably expected and not forbidden. Gagnon's employment as a camp counselor was a 24-hour per day job. Except during scheduled days off from work, staff persons were always "on call." The staff swim period was provided to the employees as a short break from work. Although the counselors were allowed to leave camp premises during the one-hour break, they were expected to be at their employer's disposal if they remained on the grounds. Thus, Gagnon's injury arose in the course of her employment. The trial court's findings were supported by the evidence and we will not disturb them.

III. *Workers' Compensation Law in the Context of Insurance Policies*

Plaintiff disputes the use of the *Murphy* analysis, *supra*, to determine whether Gagnon's injury arose out of or in the course of her employment. *Murphy* involved a workers' compensation claim, and not the interpretation of an insurance policy. *Murphy v. Town of Atkinson,* 128 N.H. 641, 517 A.2d 1170. It is our policy to favor workers' compensation claimants, *see Ranger v. N.H. Youth Dev. Center,* 117 N.H. 648, 652, 377 A.2d 132, 137 (1977), *and* insurance claimants, *Trombly v. Blue Cross/Blue Shield,* 120 N.H. at 770, 423 A.2d at 984–85, although their interests may differ regarding whether an injury was work-related. Plaintiff therefore argues that our construction of the phrase "arising out of or in the course of

employment" should be tailored to suit the particular class of injured worker; *i.e.*, those seeking workers' compensation benefits, or those seeking insurance benefits.

By law, an injured employee must forego a civil action against an employer if that employee's injury arose out of and in the course of employment. RSA 281-A:8 (Supp. 1989). Therefore, an employee seeking employer liability insurance benefits, such as Gagnon, through her estate, attempts to prove that the injury did not arise out of and in the course of employment.

On the other hand, an employee wishing to obtain workers' compensation benefits attempts to prove that the injury *did* arise out of and in the course of employment. The *Murphy* analysis, because it is drawn from workers' compensation cases, favors a finding that an employee's injury *did* arise out of and in the course of employment. For that reason, plaintiff argues that a different analysis should be used to construe an identical phrase in a general liability insurance policy.

■ We find defendant's argument in favor of using the *Murphy* analysis in general liability insurance cases persuasive. As defendant points out, the clause in its general liability policy excluding coverage for injuries arising out of or in the course of employment is a workers' compensation exclusion clause. "The objective of this exclusionary clause is to avoid duplication of coverage with respect to the subject matters covered by [defendant's] standard 'Work[ers'] Compensation and Employer's Liability Policy.'" *Royal Globe Ins. Co. v. Poirier*, 120 N.H. 422, 427, 415 A.2d 882, 885 (1980) (citations omitted); *see also* 2 R. LONG, THE LAW OF LIABILITY INSURANCE § 10.11, at 10–80 (1989) (purpose of exclusion is to avoid duplication of coverage).

In most general liability policies, the workers' compensation exclusion clause parallels the language of the workers' compensation insurance policy. Both typically use the phrase "arising out of and in the course of employment." Since the workers' compensation exclusion clause serves to avoid duplicative coverage, the phrase must be interpreted identically in the two insurance policies. Thus, if an employee is ineligible for coverage under the general liability policy because the injury arose out of and in the course of employment, that employee should automatically be eligible for workers' compensation benefits and the employer should obtain coverage under its workers' compensation insurance policy.

In this case, there is not a perfect dovetail between the workers' compensation exclusion clause in the general liability policy and the workers' compensation insurance policy. The exclusion clause in the general liability policy reads "arising out of *or* in the course of . . . employment," whereas the workers' compensation insurance policy reads "arise out of *and* in the course of . . . employment." Thus it is possible for an employee's injury to fall between the two insurance policies, if the injury is found, for example, to have arisen out of, but not in the course of employment. Here, however, Gagnon's injury was found by the trial court to have arisen out of *and* in the course of her employment. Thus it makes no difference to plaintiff's case whether the workers' compensation exclusion clause in the general liability policy uses the disjunctive "or" or the conjunctive "and."

IV. *Anne Crane's Testimony*

■ Last, plaintiff argues that Anne Crane, former Deputy Commissioner of Labor and former director of the Workers' Compensation Division of the State Department of Labor, who was called as a witness by the defendant, should not have been allowed to testify concerning Gagnon's possible eligibility for workers' compensation benefits. By asserting that Crane's testimony lacked relevance, plaintiff makes the same argument made above; that is, that a workers' compensation analysis should not be used to determine whether Gagnon's injury arose out of or in the course of employment for purposes of the general liability insurance policy. Since this argument fails, as outlined above, plaintiff's argument as to the relevance of Crane's testimony fails also.

■ The plaintiff also objects to the use of hypothetical questions by the defendant to elicit Crane's expert opinion as to whether Gagnon would be entitled to benefits under the workers' compensation statute. Such expert opinion is admissible, within the sound discretion of the trial court, where the evidence has some "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.H. R. Ev. 401; *see Peters v. McNally*, 123 N.H. 438, 440, 462 A.2d 119, 121 (1983) (trial judge has wide discretion in the admission and exclusion of opinion testimony).

*Affirmed.*

All concurred.