Merrimack
No. 92-693

CONCORD HOSPITAL

v.

NEW HAMPSHIRE MEDICAL MALPRACTICE
JOINT UNDERWRITING ASSOCIATION

November 10, 1993

*Upton, Sanders & Smith*, of Concord (*Russell F. Hilliard* and *David P. Slawsky* on the brief, and *Mr. Hilliard* orally), for the plaintiff.

*Morrison, Mahoney & Miller,* of Boston, Massachusetts (*Michael F. Aylward* on the brief and orally), for the defendant.

JOHNSON, J.   The plaintiff, Concord Hospital (hospital), appeals the Superior Court's (*McHugh,* J.) ruling that three professional liability insurance policies issued by the defendant, New Hampshire Medical Malpractice Joint Underwriting Association (JUA), do not cover the expense of defending certain lawsuits filed against the hospital after the policies expired. The issue before us is whether these policies afford such coverage, where the hospital reported the incidents giving rise to the lawsuits to the JUA during the policy periods. We hold that the policies do provide such coverage and, therefore, reverse.

The relevant facts are as follows. The hospital purchased three substantially identical one-year professional liability insurance policies from the JUA for the period of July 29, 1986, through July 29, 1989, and thereafter purchased its insurance from Conn Med. Each JUA policy is labelled, "HOSPITAL PROFESSIONAL LIABILITY COVERAGE FORM—CLAIMS MADE," and at the top of the first page of the policies is a box entitled, "TO OUR POLICYHOLDER," which reads as follows: *"This is a claims made policy. It covers claims* arising from the performance of professional services subsequent to the retroactive date indicated and *first brought against you while the policy is in force.* Please review the policy carefully and discuss the coverage with your insurance agent." (Emphasis added.) Under the box is the caption, "INSURING AGREEMENTS," the first of which, "COVERAGE," states in part:

> "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages *because of any claim or claims made against the insured during the policy period* arising out of the performance of professional services rendered or which should have been rendered, subsequent to the retroactive date, by the insured or by any person for whose acts or omissions the insured is legally responsible . . . ."

(Emphasis added and omitted.) Several words and phrases, such as "insured" and "policy period," are defined in the policy, but the word "claim" is not. Section II of the policies is entitled "COVERAGE PERIOD" and states:

> "This insurance applies only to professional services rendered or which should have been rendered after the retroac-

tive date stated in the declarations and then *only if claim is first made during the policy period.*

*If any claim.is first made during the policy period alleging injury to an individual* that would be covered by this policy, any additional claims made subsequent to the policy period for damages resulting from the same injury to the same individual shall be considered a claim hereunder. *A claim shall be considered to be first made when the company first receives written notice of the claim or occurrence.* (See Condition 3 for insured's rights to have extended reporting endorsements issued.)"

(Emphasis added and omitted.) On July 27, 1989, two days before the last JUA policy expired, the hospital notified the JUA in writing of thirty-six "patient events." On August 1, 1989, the hospital declined the JUA's offer to purchase an "extended reporting period endorsement," explaining that "our new policy with Conn Med will pick up prior acts."

Since the JUA policies expired, some of the "patient events" reported to the JUA have resulted in malpractice suits filed against the hospital. Although Conn Med undertook the hospital's defense of these suits, a deductible in the Conn Med policies has left the hospital with $50,000 in out-of-pocket losses. The hospital asked the JUA for coverage, citing the third sentence of section II, but the JUA refused. The hospital then sued the JUA in a declaratory judgment action, and both parties filed motions for summary judgment. The JUA's motion included a plea to dismiss the hospital's action as untimely filed. The superior court ruled the action timely, but agreed with the JUA that its policies were "claims made" and thus did not cover claims filed against the hospital after the policies expired. As the court found no evidence of such a claim made during the policy period, it granted the JUA's motion for summary judgment. The hospital appeals, arguing that the trial court misinterpreted the language of the JUA policies.

■■ It is ultimately for this court to interpret the language of insurance policies. *See Gagnon v. N.H. Ins. Co.*, 133 N.H. 70, 73, 573 A.2d 137, 139 (1990). Where disputed terms are not defined in the policy or by State judicial precedent, we construe them in context, *see Amica Mut. Ins. Co. v. Morrison*, 130 N.H. 250, 252, 255, 536 A.2d 199, 200, 202 (1987), and "in the light of what a more than casual reading of the policy would reveal to an ordinarily intelligent in-

sured," *Aetna Insurance Co. v. State Motors*, 109 N.H. 120, 125, 244 A.2d 64, 67 (1968); *see also Coakley v. Maine Bonding & Cas. Co.*, 136 N.H. 402, 409–10, 618 A.2d 777, 781 (1992). This is an objective standard. *Karol v. N.H. Ins. Co.*, 120 N.H. 287, 290, 414 A.2d 939, 941 (1980). Where the terms of a policy are clear and unambiguous, we accord the language its natural and ordinary meaning. *Trombly v. Blue Cross/Blue Shield*, 120 N.H. 764, 771, 423 A.2d 980, 984 (1980). Ambiguities, however, are construed against the insurer, *see Gagnon*, 133 N.H. at 74–75, 573 A.2d at 140; *Trombly*, 120 N.H. at 770–72, 423 A.2d at 984–85, and the burden is on the insurance carrier to prove a lack of coverage, RSA 491:22-a (1983).

■ Turning to the words of the JUA policies at issue here, we first note that the title and the first sentence of the policies declare the contracts to be of the "claims made" variety. As the JUA points out, the term "claims made" in insurance law refers to liability policies that afford coverage for tort claims that are both made against the insured and reported to the insurance company during the policy period. *See Chas. T. Main, Inc. v. Fireman's Fund Ins. Co.*, 406 Mass. 862, 863–64, 551 N.E.2d 28, 29 (1990). Assuming—as the JUA does—that the tort claims at issue here were not made against the hospital until after the JUA policies expired, we agree that the hospital would not be entitled to coverage under a standard "claims made" policy. The JUA policies, however, are not "claims made" simply because they say they are. "Claims made" is a category of policies that contain certain provisions; without those provisions, no amount of labelling can make these policies "claims made" or induce us to treat them as such. The layperson of average intelligence does not know what "claims made" refers to and cannot be expected to read crucial provisions into the term. *Cf. Coakley*, 136 N.H. at 414–15, 618 A.2d at 784–85 (discussing plain and ordinary meaning of "damages"). The insurance company must spell out the provisions of a "claims made" policy.

Accordingly, we disregard the labels attached to the JUA policies and examine the various provisions themselves. We agree with the JUA that the first three relevant policy provisions support its contention that the policies are indeed "claims made." The first provision states that the policy "covers claims . . . first brought against you while the policy is in force." The second promises to pay all sums the hospital becomes obligated to pay as damages "because of any claim or claims made against the [hospital] during the policy period." (Emphasis omitted.) The third states, "This insurance applies only

. . . if claim is first made during the policy period." (Emphasis omitted.) Again, on the assumption that no "claims" were made against the hospital before the JUA policies expired, these provisions—when read in isolation—would preclude coverage for the defense and indemnification of the lawsuits at issue here.

A fourth provision of the JUA policies, however, explains and modifies the third provision's requirement that claims be "first made" during the policy period. This fourth provision, found in section II of the policies, reads, "A claim shall be considered to be *first made* when the company first receives written notice of the claim *or occurrence*." (Emphasis added.) The JUA does not dispute that the "patient events" described by the hospital are "occurrences." Because the hospital notified the JUA of the "patient events" two days before the policies expired, this fourth provision supports the hospital's view that its "claims" were, in fact, "first made" during the policy period.

The JUA objects that the hospital reads this provision out of context. In the interest of clarity, we set forth again section II of the policies:

> "This insurance applies only to professional services rendered or which should have been rendered after the retroactive date stated in the declarations and then only if claim is first made during the policy period.
>
> If any claim is first made during the policy period alleging injury to an individual that would be covered by this policy, any additional claims made subsequent to the policy period for damages resulting from the same injury to the same individual shall be considered a claim hereunder. *A claim shall be considered to be first made when the company first receives written notice of the claim or occurrence.* (See Condition 3 for insured's rights to have extended reporting endorsements issued.)"

(Emphasis added and omitted.)

The JUA argues in its brief that the sentence emphasized above and relied on by the hospital modifies only the sentence immediately preceding it, concerning delayed manifestation injuries. We find that it modifies the first sentence of section II as well. An examination of the wording of the section supports this. The first sentence ends and the second sentence begins with virtually the same phrase—"if [any] claim is first made during the policy period" (emphasis omitted)—thus indicating continuity of thought and subject matter. The third

sentence then appears to explain what this phrase means: "A claim shall be considered to be first made when the company first receives written notice of the claim or occurrence." It is logical for a reader to assume that if the third sentence of section II explains the meaning of a phrase in the second sentence, it should also explain the meaning of an identical phrase found in the first sentence.

■ Moreover, under the JUA's interpretation of the third sentence, the policies would contain no reporting requirement for claims not arising from delayed manifestation injuries, such as the ones at issue here. The third sentence of section II contains the JUA policies' only requirement that the insured report "claims" to the JUA. Thus, if this sentence modified only the preceding sentence, relating to delayed manifestation injuries, the policies' only reporting requirement would apply solely to delayed manifestation injury claims. Because part of the JUA's definition of a "claims made" policy is that all tort claims against the insured must be reported to the insurance company within the policy period, the JUA's restrictive interpretation of the third sentence would support a finding that their policies are not "claims made" policies.

The JUA next contends that, in the first sentence of section II, the word "claim" means a tort claim brought against the hospital, but that, in the second and third sentences, "claim" refers only to the hospital's claim for insurance coverage. This is a variation of the JUA's earlier argument that the third sentence does not modify the first sentence's requirement that "claims" be "first made during the policy period." (Emphasis omitted.) It is unlikely, however, that a layperson of average intelligence would so interpret the policies. Nothing in section II or any other part of the policies mandates the interpretation that "claim" sometimes means "tort claim" and other times means "insurance claim." On the contrary, as described above, the language of the section strongly suggests that the three sentences should be read as a whole. If "claim" means "tort claim" in the first sentence, it means "tort claim" in the second and third sentences.

Moreover, if we hold the JUA to its earlier argument that the third sentence modifies only the second sentence, the word "claim" in the third sentence must mean "tort claim" because the word means "tort claim" in the second sentence. The second sentence, after all, refers to "claim[s] . . . alleging injury to an individual" and "claims . . . for damages resulting from the same injury to the same individual." These "claims" are obviously "tort claims," not "insurance claims."

Also, the JUA's argument that the word "claim" means "insurance claim" in the third sentence would again leave the JUA with no reporting requirement for non-delayed manifestation injury claims, thus defeating its contention that these are "claims made" policies. We conclude that the JUA policies clearly and unambiguously provide coverage.

■ The JUA also argues that, regardless of the language of the policies, we should interpret them not to provide coverage here because the hospital bought the policies believing it would not be covered for claims such as these. In support of this argument, the JUA cites *Town of Epping v. St. Paul Fire and Marine Insurance Co.*, 122 N.H. 248, 444 A.2d 496 (1982), in which this court held that the parties' actual belief regarding coverage controlled the interpretation of a policy, even though the same language had been held ambiguous in another case. This case is inapplicable here, however, because the JUA policies are unambiguous. Absent ambiguity, our search for the parties' intent here is limited to the words of the policies. *Cf. Parkhurst v. Gibson (Parkhurst)*, 133 N.H. 57, 62, 573 A.2d 454, 457 (1990).

■ The JUA next argues that we should affirm the trial court's ruling because doing so would not cause the hospital to suffer any net loss. The JUA explains that the hospital's Conn Med policies have been much cheaper than the JUA policies would have been for the same periods — in part because of the $25,000 per claim deductible — and have provided more coverage in some areas. The hospital, in fact, has saved several hundred thousand dollars by switching to Conn Med. Thus, the JUA states, the hospital will still "come out ahead" if it is forced to pay the $50,000 not covered by Conn Med and now sought under the JUA policies. Whether or not the hospital already "comes out ahead," however, is irrelevant to the question of coverage. We cannot fault the hospital for attempting to minimize its losses by making reasonable claims under its JUA policies. Concededly, it would be unfair for the hospital to seek coverage it did not pay for. But whether the JUA policies cover the claims at issue is the entire subject of this appeal.

Finally, the JUA asserts that the hospital's declaratory judgment action was untimely filed in the superior court. The superior court, however, ruled that it was timely filed. Because the JUA did not file a cross-appeal or move to add this question on appeal, we will not review it. *See In re "K"*, 132 N.H. 4, 16, 561 A.2d 1063, 1071 (1989).

In sum, we reverse the trial court's ruling and hold that the JUA policies cover the defense and indemnification of the lawsuits described. The incidents giving rise to the lawsuits occurred—and were reported to the JUA—during the policy periods, and under our reading of the policy language, coverage must follow.

*Reversed and remanded.*

All concurred.