Hillsborough-northern judicial district
No. 2001-053

PATRICIA PANCIOCCO

v.

LAWYERS TITLE INSURANCE CORPORATION

Argued: February 6, 2002
Opinion Issued: April 17, 2002

*Law Offices of Randall E. Wilbert,* of Nashua (*Randall E. Wilbert* on the brief and orally), for the plaintiff.

*Holland, Donovan, Beckett & Hermans, PA,* of Exeter (*Stephen G. Hermans* on the brief and orally), for the defendant.

BRODERICK, J. The plaintiff, Patricia Panciocco, appeals the decision of the Superior Court (*Conboy,* J.) granting summary judgment to the defendant, Lawyers Title Insurance Corporation. We affirm.

The record supports the following facts. On August 12, 1999, the plaintiff purchased a parcel of land on which she intended to build a house. On the same date, she purchased a title insurance policy, which was issued by the defendant the next day. In October, after site preparation for the house construction had begun, abutters Anita and George Varrato brought an action in superior court to quiet title and for injunctive relief, asserting that the plaintiff was trespassing on their property and that they had obtained title to a portion of the plaintiff's land by adverse possession. Specifically, the Varratos asserted that the plaintiff cut trees from their land, placed lot line stakes in the middle of their septic system and encroached approximately thirty feet onto their property. The plaintiff provided notice of the Varratos' claims to the defendant and requested a defense and coverage under the title insurance policy.

The defendant denied coverage because it perceived the Varratos' litigation as involving claims for adverse possession and disputed boundary lines, which it claimed are excepted from coverage under Schedule B of the plaintiff's policy. The policy states:

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS, LAWYERS TITLE INSURANCE CORPORATION, ... insures ... against loss or damage ... sustained or incurred by the insured by reason of:

1. Title to the estate or interest described in Schedule A being vested other than as stated therein;
2. Any defect in or lien or encumbrance on the title;
3. Unmarketability of the title;
4. Lack of a right of access to and from the land.

. . . .

SCHEDULE B
EXCEPTIONS FROM COVERAGE
This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

. . . .
1. Rights or claims of persons in possession.
2. Easements or claims of easements not shown by the public records, boundary-line disputes, overlaps, encroachments, title to filled lands (if any) and any matters not of record which would be disclosed by an accurate survey and inspection of the premises.

In April 2000, the plaintiff filed a petition for declaratory judgment, seeking a declaration that her policy obligated the defendant to provide both a defense and coverage for the Varratos' suit. *See* RSA 491:22 (1997). The defendant moved for summary judgment. After determining that no genuine issues of material fact existed, the trial court interpreted the policy language excepting coverage for "rights or claims of persons in possession" and "matters not of record which would be disclosed by an accurate survey and inspection of the premises" to include claims for adverse possession. The court also concluded that the policy clearly and unambiguously excepted from coverage actions involving boundary-line disputes and encroachments. Because it found that the Varratos' claims fell within these policy exceptions, the court granted the defendant's motion. The plaintiff's motion for reconsideration was denied, and this appeal followed.

On appeal, the plaintiff argues that the trial court erred by granting the defendant's motion for summary judgment because: (1) genuine issues of material fact existed; and (2) her policy is ambiguous and thus should be construed according to the reasonable expectations of the policy holder. Additionally, the plaintiff argues that the title insurance policy is unconscionable as a matter of law and, therefore, the defendant should be required to provide her with a defense and coverage.

## I

In acting upon a motion for summary judgment, the trial court is required to construe the pleadings, discovery and affidavits in the light most favorable to the non-moving party to determine whether the proponent has established the absence of a dispute over any material fact and the right to judgment as a matter of law. *Singh v. Therrien Management Corp.*, 140 N.H. 355, 356-57 (1995). The party objecting to a motion for summary judgment "may not rest upon mere allegations or denials of his [or her] pleadings, but his [or her] response, by affidavits or by reference to depositions, answers to interrogatories, or admissions, must set forth specific facts showing that there is a genuine issue [of material fact] for trial." RSA 491:8-a, IV (1997). An issue of fact is material if it affects the outcome of the litigation. *Horse Pond Fish & Game Club v. Cormier*, 133 N.H. 648, 653 (1990).

To determine whether the trial court erred in granting the defendant's motion, we consider the affidavits and other evidence, as well as all proper inferences therefrom, in the light most favorable to the plaintiff. *Dover Mills Partnership v. Comm. Union Ins. Cos.*, 144 N.H. 336, 337 (1999). If we find no genuine issue of material fact and that the defendant was entitled to judgment as a matter of law, we will affirm the trial court's decision. *See id.*

The interpretation of the language of an insurance policy is ultimately a question of law for us to decide. *See Concord Hosp. v. N.H. Medical Malpractice Joint Underwriting Assoc.*, 137 N.H. 680, 682 (1993). Where disputed terms are not defined in a policy or by State judicial precedent, we apply an objective standard, construing the terms in context and as would a reasonable person in the position of the insured, based upon more than a casual reading of the policy as a whole. *Id.* at 682-83. If the policy language may reasonably be interpreted in more than one way and one interpretation supports coverage, any ambiguity is construed in favor of the insured and against the insurer. *High Country Assocs. v. N.H. Ins. Co.*, 139 N.H. 39, 41 (1994). Absent ambiguity, however, our search for the parties' intent is limited to the words of the policy. *Concord Hosp.*, 137 N.H. at 686.

## II

■ The plaintiff first argues that numerous issues of material fact existed relating to the interpretation of her title insurance policy as well as the nature and effect of the lawsuit filed by the Varratos. We disagree. An insurer's obligation to defend suits, including groundless ones, is generally limited to only those claims for which it has assumed liability under the terms of its policy. *Hersey v. Maryland Casualty Co.*, 102 N.H. 541, 542-43 (1960). Thus, the ultimate question in the declaratory judgment action was whether the Varratos' claims brought their cause of action within the express terms of the plaintiff's title insurance policy. To make such a determination, the trial court properly examined the relevant portions of the policy along with the Varratos' pleadings. *See Green Mt. Ins. Co. v. Foreman*, 138 N.H. 440, 441-42 (1994). As the trial court noted, interpretation of policy language is an issue of law, not fact. *See Concord Hosp.*, 137 N.H. at 682. Similarly, the determination of whether the underlying litigation falls outside the bounds of coverage is an issue of law for the court to decide. *See Green Mt. Ins. Co.*, 138 N.H. at 442.

■ The plaintiff also argues that there was a genuine issue of fact as to whether the defendant violated its duty of good faith and fair dealing by failing to deliver the insurance policy to her before she closed on the property. The defendant does not dispute that the policy was issued the day following the closing. Whether this constituted a breach of the defendant's duty of good faith and fair dealing is a question of law properly decided by the trial court and had no bearing on the outcome of the declaratory judgment action. Accordingly, we hold that, based upon the pleadings and affidavits before it, the trial court was correct in concluding that there was no genuine issue of material fact before it on this issue.

## III

■ The plaintiff further argues that the title insurance policy was ambiguous and should be construed in accordance with her reasonable expectations. She contends that, before interpreting the policy, the trial court was required to hear testimony and receive evidence about her expectations of the policy's coverage. We disagree. As a preliminary matter, we note that the plaintiff misapprehends the analysis. In construing undefined policy terms, we apply an objective standard, based upon what a reasonable person in the position of the insured would understand. *Concord Hosp.*, 137 N.H. at 682-83. Therefore, we need not consider the plaintiff's subjective expectations of the policy's coverage.

■ The policy before us insures, among other things, against loss or damage sustained as a result of unmarketability of title *subject to the exceptions contained in Schedule B*. Schedule B specifically excludes from coverage rights or claims of persons in possession, boundary-line disputes and encroachments. Although not defined in the policy, "the provision concerning claims by persons in possession is a standard exception from coverage [in title insurance policies] specifically relating to claims like adverse possession." 11 L. RUSS & T. SEGALLA, COUCH ON INSURANCE 3D § 159:70 (1998). While not determinative, such an interpretation has been adopted by other jurisdictions. *See, e.g., Cheverly v. Ticor*, 642 A.2d 285, 288 (Md. App. 1994). The rationale for excluding claims of parties in possession has been well stated.

> When a person, who does not appear in the chain of title, is found in possession of property it may indicate, for example, that he is making claim to the property by adverse possession, or that he is claiming under an unrecorded deed. A title examiner, however, seldom visits the land the title to which he is concerned with. Thus, both to protect themselves and to put their client on notice of this state of affairs, title examiners and title insurance companies generally exclude from their title opinions and policies claims of parties in actual possession of the land insured.

*Id.* at 289 (quotation omitted). "[G]enerally, 'possession' within the context of title insurance policies refers to an open, visible and exclusive use." *Id.* at 288 (quotation omitted).

■ In their pleadings, the Varratos assert that they occupied the land at issue "openly, continuously, exclusively, under claim of right, and adversely," thereby obtaining it through adverse possession, and that the plaintiff crossed over a boundary line and encroached on their property. These claims were expressly excepted from coverage by the policy's unambiguous language excluding rights or claims of persons in possession, boundary-line disputes and encroachments, and thus the plaintiff could not reasonably expect coverage. Accordingly, we hold that the plaintiff was not entitled to coverage under the terms of the policy and that the defendant was entitled to judgment as a matter of law.

IV

Lastly, the plaintiff argues that the title insurance policy was unconscionable because she was not aware of the exceptions from coverage until after the conveyance, when she actually received the policy. In

addition, she argues that the policy, as written, was unconscionable. We need not address these arguments because they were not raised before the trial court and thus were not preserved for appeal. *See Dube v. Town of Hudson*, 140 N.H. 135, 138 (1995).

*Affirmed.*

BROCK, C.J., and NADEAU, DALIANIS and DUGGAN, JJ., concurred.