Rockingham
No. 2006-008

MAUD ANDERSON *& a.*

v.

MOTORSPORTS HOLDINGS, LLC

Argued: April 3, 2007
Opinion Issued: May 30, 2007

*Rath, Young and Pignatelli, P.C.*, of Concord (*Andrew W. Serell* on the brief and orally), for the petitioners.

*Devine, Millimet & Branch, P.A.*, of Manchester (*Susan V. Duprey & a.* on the brief, and *Thomas Quarles, Jr.* orally), for the respondent.

*Paul G. Sanderson*, of Concord, by brief, for the New Hampshire Local Government Center, as *amicus curiae*.

*Baldwin, Callen & Ransom, PLLC*, of Concord (*Jed Z. Callen* on the brief) for the New Hampshire Association of Conservation Commissions, as *amicus curiae*.

GALWAY, J. The respondent, Motorsports Holdings, LLC, appeals an order of the Superior Court (*McHugh*, J.) denying its motion for summary judgment and granting the cross-motion for summary judgment filed by the petitioners, who are residents of the town of Tamworth. We affirm.

The following facts are undisputed. The respondent owns approximately 250 acres of land in Tamworth, on which it wishes to build a private, 3.1-mile automobile racetrack to be used as a "private driving instructional facility and motorsports country club." Along with the track, the respondent's development plan calls for structures to support the repair, servicing, and garaging of racing vehicles, as well as a hotel, restaurant, access road, and parking facilities.

Construction of the development would involve dredging and filling 14,759 square feet of wetlands and would affect 16,952 square feet of intermittent streams. In total, construction would affect seventeen distinct wetland areas. The development site is located directly over primary and secondary recharge areas for the Ossipee Aquifer, which provides drinking water for Tamworth and twenty-seven other towns in New Hampshire and Maine.

The respondent obtained: (1) a dredge-and-fill wetlands permit from the New Hampshire Department of Environmental Services (DES); (2) a site-specific alteration-of-terrain permit from DES; (3) a wetlands permit from the United States Army Corps of Engineers (USACE); and (4) a water quality certificate from DES. DES required the respondent to provide a conservation easement on 107 acres of land in Sandwich to mitigate the negative environmental impacts of the project. The respondent also applied for a special use permit, pursuant to Tamworth's Wetlands Conservation Ordinance (WCO); however, it withdrew its application before the Tamworth Planning Board (Board) reached a decision upon it.

The petitioners sought a declaratory judgment from the superior court, requesting, *inter alia*, a declaration that the respondent had to obtain a special use permit pursuant to the WCO before beginning construction. The court ruled that the Town of Tamworth was a necessary party to the declaratory judgment action and invited the Town to participate in the lawsuit. The court notified the Town that, whether or not it participated, it would be bound by the result of the declaratory judgment action. The Town chose not to participate. The parties then filed cross-motions for

summary judgment regarding issues of standing and whether the WCO, by its own terms, applied to the respondent's proposed development or whether it yielded to state and federal regulation. The respondent argued that it did not need to obtain a special use permit pursuant to the WCO.

The trial court granted the petitioners' motion for summary judgment, ruling that the WCO applied to the respondent's project. The trial court denied the respondent's motion for summary judgment, ruling that, although the petitioners did not enumerate the specific criteria for each petitioner's standing, such a showing was unnecessary because some of them certainly had standing.

The respondent appeals the trial court's rulings on summary judgment.

> When reviewing a trial court's grant of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party. If our review of the evidence does not reveal any genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, we will affirm the trial court's decision. We review the trial court's application of the law to the facts *de novo*.

*Dalton Hydro v. Town of Dalton*, 153 N.H. 75, 77 (2005) (citations omitted). An issue of fact is material if it affects the outcome of the litigation. *Panciocco v. Lawyers Title Ins. Corp.*, 147 N.H. 610, 613 (2002).

## I. Stringency

The respondent's first argument is that the trial court erred as a matter of law by interpreting the WCO as being more stringent than the federal and state wetlands permit review. This argument is based solely upon Section I of the WCO, which states: "Where any provision of this ordinance is in conflict with State or Federal law or regulation, or other Town ordinance, the more stringent provision shall apply." The respondent argues that the relevant state and federal regulations are more stringent and comprehensive than the WCO, and, thus, the WCO is inapplicable by its own terms and the respondent need not obtain a special use permit from the Board. The respondent also argues that the evidence established at least a genuine issue of material fact precluding summary judgment for the petitioners.

The interpretation of a zoning ordinance is a question of law, which we review *de novo*. *Harrington v. Town of Warner*, 152 N.H. 74, 79 (2005). We are the final arbiter of the interpretation of a zoning ordinance's terms. *Olszak v. Town of New Hampton*, 139 N.H. 723, 726 (1995). Because the traditional rules of statutory construction generally govern our review, the

words and phrases of an ordinance should be construed according to the common and approved usage of the language. *Harrington*, 152 N.H. at 79. When the language of an ordinance is plain and unambiguous, we need not look beyond the ordinance itself for further indications of legislative intent. *Id.* Moreover, we will not guess what the drafters of the ordinance might have intended, or add words that they did not see fit to include. *Id.*

The WCO provides, in pertinent part:

### A. Purpose and Intent

The purpose of this Ordinance is to protect the public health, safety and general welfare by controlling and guiding the use of land areas which have been found to be subjected to standing water, flooding, high water tables for extended periods of time.

It is intended that this Ordinance shall:

1. Prevent the development of structures and land uses on naturally occurring wetlands which will contribute to pollution of surface and ground water by sewage, sediment, or noxious substances.

2. Prevent the destruction of, or significant changes to natural wetlands which provide flood protection.

3. Protect rare, unique, and unusual natural communities, both floral and faunal.

4. Protect wildlife habitats and maintain ecological balances.

5. Protect potential water supplies and existing aquifers (water-bearing stratum) and aquifer recharge areas.

6. Prevent expenditure of municipal funds for the purposes of providing and/or maintaining essential services and utilities which might be required as a result of misuse or abuse of wetlands.

7. Encourage those low-intensity uses that can be harmoniously, appropriately and safely located in wetlands.

. . . .

### D. Permitted Uses Within the Wetlands Conservation District

1. The construction or maintenance of single-family dwellings, garages, and driveways, excluding septic disposal systems, on pre-existing lots of record as of the effective date of this ordinance (March 12, 1991) . . . .

2. The following uses are permitted which will not require the erection or construction of any structures of [*sic*] buildings, will not alter the natural surface configuration by the addition of fill

or dredging, and uses that otherwise are permitted. Such uses may include the following:

(a) Forestry—Tree Farming, using the best management practices outlined in *"Best Management Practices for Erosion Control on Timber Harvesting in New Hampshire"* ... to protect wetlands and waterbodies from damage and to prevent sedimentation;

(b) Cultivation and Harvesting of Crops and Grazing, using standards provided by the Soil Conservation Service, including the protection of wetlands from pollution caused by fertilizers, pesticides and herbicides;

(c) Wildlife Refuges, consistent with the purpose and intent of this ordinance;

(d) Parks and Recreation Uses, consistent with the purpose and intent of this ordinance;

(e) Conservation Areas and Nature Trails, consistent with the purpose and intent of this ordinance;

(f) Open Spaces ... ;

(g) Uses incidental to the enjoyment or maintenance of residential property. . . .

3. No person shall conduct or maintain another activity without first obtaining a Special Use Permit as described in Section E.

## E. Special Use Permits

1. Special Use Permits may be issued by the Board, after proper public notice and public hearing, for undertaking the following uses in the Wetlands Conservation District when the application has been referred to the Commission and to the Health Officer for review and comment at least thirty (30) days prior to the hearing.

. . . .

(c) The undertaking of a use not otherwise permitted in the Wetlands Conservation District, if it can be shown that such proposed use is not in conflict with any and all of the purposes and intentions listed in Section A of this ordinance.

. . . .

### F. Special Provisions

. . . .

2. Unless otherwise permitted by the Board, no construction activity shall encroach within twenty-five (25) feet of the limits of a wetland; all efforts shall be made by the site developer to maintain this buffer in its undisturbed vegetative state.

. . . .

### I. Conflict with Other Regulations

Where any provision of this ordinance is in conflict with State or Federal law or regulation, or other Town ordinance, the more stringent provision shall apply.

(Italics omitted.)

The WCO establishes a regulatory permitting scheme. Section D lists activities or uses that are approved for wetlands without obtaining a special use permit; other uses require a special use permit under Section E. Under Section E, a special use permit may be obtained if the proposed use is not otherwise prohibited by the ordinance and does not conflict with any of the purposes and intentions listed in Section A. Section I, the section relied upon by the respondent, fits into this scheme as follows: if any provision in the WCO conflicts with a state or federal law or regulation, or other Town ordinance, the more stringent provision applies.

The respondent misconstrues Section I. The focus of the respondent's argument is that it need not obtain a special use permit because the state and federal wetland regulations conflict with and are more stringent than the requirements of the WCO, and, thus, the WCO does not apply. Section I does not obviate the need to obtain a special use permit, however. Section I states: "Where any *provision* of this ordinance is in conflict with State or Federal law or regulation, or other Town ordinance, the more stringent *provision* shall apply." (Emphasis added.) Thus, if provisions of the WCO conflict with and are less stringent than comparable provisions in state or federal regulations, the more stringent provisions must be satisfied to obtain a special use permit. Nothing in Section I eliminates the requirement to obtain a special use permit when provisions from state or federal regulations are more stringent.

Because Section I does not eliminate the need to obtain a special use permit under the WCO, we need not address whether any provisions of the WCO conflict with and are less stringent than provisions of state and federal regulations. Even if the respondent identified such provisions of

the WCO, the respondent would still have to apply for a special use permit. Accordingly, we conclude that the trial court correctly ruled that the petitioners were entitled to summary judgment as a matter of law regarding the WCO's application to the respondent's project. We note that the Board may not interpret the standards in Section A illegally or unreasonably in order to support a determination of stringency. *See* RSA 677:15 (1996).

As for the respondent's argument that there remains a genuine issue of material fact precluding summary judgment for the petitioners on this issue, we find none. Our reasoning above involves statutory interpretation and does not rely upon any disputed material facts.

## II. Vagueness

The respondent next argues that the seven factors listed in Section A of the WCO are unconstitutionally vague and that the WCO should be held void for vagueness.

As stated above, the interpretation of a zoning ordinance is a question of law, which we review *de novo. Harrington,* 152 N.H. at 79.

> The burden of proving the invalidity of an ordinance lies with the party attacking its validity. When a municipal ordinance is challenged, there is a presumption that the ordinance is valid and, consequently, not lightly to be overturned. The standard for determining vagueness is that generally, a municipal ordinance must be framed in terms sufficiently clear, definite, and certain, so that an average person after reading it will understand when one is violating its provisions.

*Town of North Hampton v. Sanderson,* 131 N.H. 614, 619-20 (1989) (quotations, citations and brackets omitted). "A reference to 'sufficient' clarity is, of course, a criterion of reasonableness, and our prior cases have avoided any suggestion that a fussy standard of technical drafting should be applied in passing on the validity of municipal or administrative regulations." *Barton v. H.D. Riders Motorcycle Club,* 131 N.H. 60, 64 (1988). "That is, a mere want of precision will not overcome the presumption of validity that a municipal enactment enjoys." *Id.* (citation omitted).

Under the WCO, a person wishing to use a wetland in a manner that is not permitted by Section D must obtain a special use permit pursuant to Section E. Section E states that the Board will issue such a permit "if it can be shown that such proposed use is not in conflict with any and all of the purposes and intentions listed in Section A of this ordinance." After an

introductory statement about protecting public health and general welfare, Section A states: "It is intended that this Ordinance shall:" and lists seven intentions of the WCO.

■ The respondent has failed to articulate what language it finds vague in Section A. This failure, by itself, is fatal to its argument, as it bears the burden of proof. Furthermore, we find no language in Section A that is so vague as to be unconstitutional.

We note that we have previously upheld less precise provisions in ordinances. In *Carbonneau v. Town of Rye*, 120 N.H. 96, 97-98 (1980), we considered § 14-C(3) of the Rye Zoning Ordinance, which prohibited "any use or thing which is injurious, noxious, or offensive to the neighborhood." The plaintiff argued that § 14-C(3) should be void for vagueness, but we upheld it as providing sufficient guidance. *Id.*; *see also Bethlehem v. Robie*, 111 N.H. 186, 187-88 (1971) (upholding ordinance prohibiting the erection of structures that are "detrimental or injurious to adjoining property"); *State v. Dean*, 109 N.H. 245, 246 (1968) (upholding ordinance prohibiting "any business or industry which would be seriously detrimental or offensive to owners of adjoining property"). Accordingly, the trial court did not err in declining to find the WCO void for vagueness.

## III. Selective Enforcement

The respondent next argues that because the Board never applied the WCO to any wetlands project until the respondent's, requiring the respondent to obtain a special use permit constituted selective and discriminatory enforcement in violation of the respondent's equal protection and due process rights. The respondent also argues that the evidence created a genuine issue of material fact precluding summary judgment for the petitioners.

■ To show that the enforcement of an ordinance was discriminatory, the respondent must show more than that the enforcement was merely historically lax. *Bacon v. Town of Enfield*, 150 N.H. 468, 474 (2004). Instead, it must show that the selective enforcement was a conscious, intentional discrimination. *Id.* In addition, it "must assert and demonstrate that the Town impermissibly established classifications and, therefore, treated similarly situated individuals in a different manner in order to set forth an equal protection claim." *Id.* (brackets and quotations omitted).

In support of its contention, the respondent states that, for the fifteen years that the WCO was in effect before the respondent's application, the Board had never required a property owner to obtain a special use permit under the WCO. Such a period without enforcement may show historical laxity, but, as stated above, that is not sufficient to prove discrimination.

The respondent must show that the selective enforcement of the ordinance against it was a conscious, intentional discrimination.

██ The respondent also attempts to show discrimination by naming other projects that affected wetlands but were not required to obtain a special use permit. One such project was the removal of a dam from a river in Tamworth, which came before the Town in 2002. Without describing the size of the dam, the respondent states, "A dam removal is clearly a significant project obviously impacting wetlands and creating great potential for pollution." The second project named by the respondent is a plan to install utility lines under the same river, which came before the Town in 2001. Again, the respondent does not describe the size of this project, but states that it had "obvious significant wetlands impact." Despite the analogies drawn by the respondent, the trial court found that the respondent's proposed development exceeded in both size and scope all other developments in Tamworth since enactment of the WCO. Further, the trial court found that the respondent had not presented any evidence that prior applicants were situated on a major aquifer, seeking to build on over 250 acres. Additionally, the respondent neither asserts nor demonstrates that Tamworth impermissibly established classifications and treated similarly situated individuals in a different manner. There is no assertion in the respondent's argument that Tamworth established any sort of classifications. The party objecting to a motion for summary judgment may not rest upon mere allegations or denials of his pleadings. *Panciocco*, 147 N.H. at 613. His response, by affidavits or by reference to depositions, answers to interrogatories or admissions, must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id.* Because the respondent has failed to set forth specific facts demonstrating discrimination, we agree with the trial court's conclusion that the evidence presented by the respondent was insufficient to show discriminatory enforcement.

As for its due process claim, the respondent argues that, "If the Town required different conditions than DES or the [USACE], then [the respondent] would have to resubmit its plans for review by those two agencies who might not agree or who might make further changes requiring [the respondent] to return to the Town again, with this cycle potentially repeating many times." The respondent argues that such a "regulatory limbo" would violate its due process rights. The respondent does not identify whether the due process rights he claims arise under the Federal or State Constitutions and fails to cite a provision of either constitution. We will not address a party's state constitutional argument on appeal if the party does not specifically invoke in its brief a provision of

the State Constitution. *WMUR Channel Nine v. N.H. Dep't of Fish & Game*, 154 N.H. 46, 48 (2006). Accordingly, we address only the federal claim.

■ The implication of the respondent's argument is that it has a due process right to not have to comply with a municipal regulatory scheme that has different requirements from a state or federal regulatory scheme. We have never found such a right. To the contrary, we have stated that, "A municipality is not estopped from creating more restrictive rules for wetlands issues than those required by the [New Hampshire Department of Environmental Services] Wetlands Board." *Cherry v. Town of Hampton Falls*, 150 N.H. 720, 725 (2004) (brackets and quotation omitted); *see also* 15 P. LOUGHLIN, NEW HAMPSHIRE PRACTICE, LAND USE PLANNING AND ZONING § 37.05, at 176 (Supp. 2006) (stating that local wetlands regulations may be more restrictive than those of the State). Accordingly, the respondent has not shown that Tamworth violated the respondent's due process rights as a matter of law.

Finally, the respondent states that the evidence of discrimination it presented created a genuine issue of material fact precluding summary judgment. There is no dispute regarding the facts alleged by the respondent on this issue, however. The trial court accepted as part of its analysis that "in the fifteen years since the enactment of the WCO, the Board has not once required the issuance of a [special use permit], even where wetlands were clearly impacted and state wetlands permits had been applied for." Further, there is no dispute that the Town did not require a special use permit for projects such as the dam removal and the laying of power lines beneath the river. Accordingly, there is no material issue of fact in dispute that precludes summary judgment.

## IV. Administrative Gloss

The respondent's fourth argument is that, because the WCO is ambiguous, it should have been subject to the administrative gloss doctrine. Because the Town of Tamworth consistently allowed developments to affect wetlands without requiring a special use permit, the respondent argues, the Town established an administrative gloss of non-enforcement on the WCO, and therefore could not interpret the WCO to require the respondent to obtain a special use permit.

■ The doctrine of administrative gloss is a rule of statutory construction. *DHB v. Town of Pembroke*, 152 N.H. 314, 321 (2005). As previously stated, the interpretation of a zoning ordinance is a question of law, which we review *de novo*. *See Harrington*, 152 N.H. at 79.

> An administrative gloss is placed on an ambiguous clause of a
> zoning ordinance when those responsible for its implementation
> interpret the clause in a consistent manner and apply it to
> similarly situated applicants over a period of years without
> legislative interference. If an administrative gloss is indeed found
> to have been placed on a clause, the municipality may not change
> such a *de facto* policy, in the absence of legislative action, because
> to do so would presumably violate legislative intent.

*Nash Family Inv. Prop. v. Town of Hudson*, 139 N.H. 595, 602 (1995)
(quotation omitted).

■ We have held that a lack of ambiguity in a statute or ordinance
precludes application of the administrative gloss doctrine. *See DHB*, 152
N.H. at 321; *Heron Cove Assoc. v. DVMD Holdings*, 146 N.H. 211, 216
(2001). We have also held that a failure to show a *de facto* policy of non-
enforcement regarding similarly situated applicants precludes application
of the administrative gloss doctrine. *Nash Family Inv. Prop.*, 139 N.H. at
602; *see also* 15 P. LOUGHLIN, NEW HAMPSHIRE PRACTICE, LAND USE
PLANNING AND ZONING § 6.02, at 95-96 (2000) (stating that administrative
gloss will not apply when the ordinance is not ambiguous, the
interpretation of the ordinance has not been consistent, or where none of
the previously considered projects have been similarly situated).

■ In the instant case, the respondent has failed to show either that the
WCO is ambiguous or that its development is similarly situated to those of
prior applicants. The respondent asserts that "a simple reading of the
convoluted [WCO] dispels any notion that the [WCO] is not ambiguous";
however, the respondent provides no analysis to support this conclusory
statement. Upon review of the WCO, we find no ambiguity. Moreover, as
described above, the respondent's development is not similarly situated to
those of prior applicants. The trial court found that the respondent's
proposed development exceeded in both size and scope all other
developments in Tamworth since enactment of the WCO. Accordingly, we
reject the respondent's argument that the WCO should have been subject
to the administrative gloss doctrine.

*V. "Parks and Recreation"*

The respondent next argues that the trial court failed to consider
whether its development qualifies as a "Parks and Recreation" permitted
use pursuant to the WCO. The respondent contends that it does.

■ We do not agree that the trial court failed to consider whether the
development qualified as a Parks and Recreation permitted use. Although

the trial court did not specifically discuss the Parks and Recreation exemption, it ruled that "the plain terms of the WCO indicate that the Respondent must be granted a [special use permit] in order to proceed with construction." The trial court thus ruled that the respondent did not qualify for any of the exemptions in the WCO, including the Parks and Recreation exemption.

Nor do we find error in the trial court's ruling. The interpretation of a zoning ordinance is a question of law, which we review *de novo*. *Harrington*, 152 N.H. at 79. Section D of the WCO provides: "The following uses are permitted which will not require the erection or construction of any structures of [*sic*] buildings, will not alter the natural surface configuration by the addition of fill or dredging, and uses that otherwise are permitted." One use listed in Section D is: "Parks and Recreation Uses, consistent with the purpose and intent of this ordinance." The plain language of Section D states that the uses listed will be permitted without a special use permit if they do not require the erection or construction of any structures or buildings. The respondent does not contest the trial court's finding that the proposed development will require "support structures for the repair, servicing, and garaging of vehicles," as well as "a hotel and restaurant." Accordingly, the trial court did not err as a matter of law in ruling that the respondent's development does not fall under the "Parks and Recreation" exception to the WCO's special use permit requirement.

The respondent argues that the restrictions of Section D cannot be read literally, because doing so would eliminate all uses in the district to which the WCO applies. We disagree. Under the plain terms of the WCO, the "Parks and Recreation" exception would allow for any park or recreational use that is consistent with the purpose and intent of the ordinance and that required neither the construction of structures nor filling or dredging. Recreational camping could be one example of a permitted use under Section D.

*VI. Jurisdiction*

The respondent next argues that the WCO applies to wetlands and water bodies only, and not to any adjacent "buffer zones." It relies solely upon the language and structure of the WCO, arguing that, because the "Title and Authority," "Purpose and Intent," and definitions sections of the WCO discuss "wetlands" and "waterbodies," but do not mention the land surrounding such areas, the WCO does not apply to the surrounding land. The respondent acknowledges, however, that Section F of the WCO expressly establishes setbacks from wetlands.

The interpretation of a zoning ordinance is a question of law, which we review *de novo. Harrington,* 152 N.H. at 79. Section F of the WCO provides, in pertinent part: "Unless otherwise permitted by the Board, no construction activity shall encroach within twenty-five (25) feet of the limits of a wetland . . . ." Section F is fully consistent with Section A, the "Purpose and Intent" section, which provides: "The purpose of this Ordinance is to protect the public health, safety and general welfare by controlling and guiding the use of land areas which have been found to be subjected to standing water, flooding, high water tables for extended periods of time." A primary purpose for establishing setbacks from wetlands is to preserve and protect the wetlands themselves in order to promote the public welfare. *See* 3 E. ZEIGLER, RATHKOPF'S THE LAW OF ZONING AND PLANNING § 53:3, at 53-7 (2006). Thus, the ordinance's purpose is clearly furthered by construing it to govern the setbacks provided for in Section F. Moreover, to read the WCO as narrowly as the respondent suggests would nullify Section F. If the language used in a statute may reasonably be construed to have some purpose and effect, it must be read in that light. *Kalloch v. Board of Trustees,* 116 N.H. 443, 445 (1976). Accordingly, the trial court did not err by declining to rule that the WCO applies to wetlands and water bodies only and not to any "buffer zones" provided for in Section F.

*VII. Standing*

The respondent's final arguments are that the trial court erred as a matter of law when it ruled that those petitioners whose properties do not abut the respondent's property have standing in this case, and erred when it allowed two additional parties to join the lawsuit after the court-imposed deadlines for joinder had passed.

The respondent concedes that at least one of the named petitioners in this case owns abutting property. The respondent also concedes, therefore, that at least one of the petitioners has standing. We agree. *Cf. Goldstein v. Town of Bedford,* 154 N.H. 393, 396 (2006).

*Affirmed.*

BRODERICK, C.J., and DALIANIS, DUGGAN and HICKS, JJ., concurred.