Rockingham
No. 2007-091

VERIZON NEW ENGLAND, INC.

v.

CITY OF ROCHESTER

Argued: November 8, 2007
Opinion Issued: December 28, 2007

*McLane, Graf, Raulerson & Middleton, P.A.*, of Manchester (*Jack B. Middleton* and *Scott H. Harris* on the brief, and *Mr. Harris* orally), for the plaintiff.

*Wensley, Jones & Azarian, PLLC*, of Rochester (*Danford J. Wensley* on the brief and orally), for the defendant.

DUGGAN, J. The defendant, City of Rochester (city), appeals a decision of the Superior Court (*Morrill*, J.) ruling that the city's taxation of the plaintiff, Verizon New England, Inc. (Verizon), for its use and occupation of public property violated Verizon's equal protection rights. We affirm.

This case is before us for a third time. *See Verizon New England v. City of Rochester*, 151 N.H. 263 (2004) (*Rochester II*); *N.E. Tel. & Tel. Co. v. City of Rochester*, 144 N.H. 118 (1999) (*Rochester I*). We recite only a brief history of the facts necessary to decide this appeal.

Verizon provides telecommunications services to the residents of the city. *Rochester II*, 151 N.H. at 265. In accordance with RSA 231:161 (1993), Verizon obtained licenses from the city for the placement of its poles, wires, cables and other equipment on city-maintained highways. *Id.*

In March 1996, the city manager and the commissioner of public works petitioned the city council to amend Verizon's pole licenses to include language from RSA 72:23, I(b) (Supp. 1993) (amended 1999, 2002, 2003), and to require Verizon to pay real estate taxes for its use of the public ways. *Id.*; *see* RSA 72:23, I (Supp. 1993) (amended 1999, 2002, 2003); RSA 72:6 (1991). In August 1996, the mayor and the city council determined that the public good required the licenses to be amended and granted the petition. *Rochester II*, 151 N.H. at 265.

Verizon appealed this decision to the superior court. *Id.* The trial court held that: (1) Verizon's licenses were not leases or other agreements within the meaning of RSA 72:23, I; and (2) the mayor and city counsel erred in finding that the public good required the city to amend Verizon's licenses. *Id.* The city appealed. *Id.*

In *Rochester I*, we reversed the trial court's decision, holding that Verizon's pole licenses constituted agreements to occupy and use public property, and, therefore, the terms of RSA 72:23, I(b) were applicable. *Id.* We also held that the amendments were required by the public good. *Id.* Accordingly, we reversed the trial court's order insofar as it prohibited the city from amending Verizon's licenses and remanded for further proceedings.

On remand, after a bench trial, the trial court ruled that the city could lawfully amend Verizon's pole licenses to require Verizon to pay real estate taxes. *Id.* The trial court, however, also found that the city "failed to follow a recognized methodology in reaching its conclusions regarding the market value of Verizon's use of the land pursuant to its pole licenses." *Id.* (quotation omitted). Therefore, the trial court granted Verizon's abatement petitions "to the extent that the city's tax bills ... must be

reassessed based on an appropriate methodology." *Id.* (quotation omitted). Both parties appealed. *Id.*

In *Rochester II*, Verizon argued that: (1) RSA 72:23, I, does not allow the city to tax Verizon's use of the public ways; (2) the city's proposed tax unconstitutionally singles out Verizon; and (3) the city's amendment of Verizon's pole licenses is not consistent with the public good. *Id.* at 265-66. The city cross-appealed and argued that the trial court erred in granting in part Verizon's petitions for abatement because Verizon failed, as a matter of law, to satisfy its burden of establishing that it is paying more than its proportional share of the common tax burden. *Id.* at 266.

We upheld the trial court's ruling that the city could lawfully amend Verizon's pole licenses to require Verizon to pay real estate taxes. *Id.* at 267-70. In its equal protection challenge, Verizon attacked the city's use of its broad taxing power under RSA 72:6 and the exemption in RSA 72:23, I, to selectively impose real estate tax assessments upon Verizon's use and occupation of public land, but not upon the gas, cable and electric companies that similarly use and occupy the public ways. *Id.* at 270. The trial court found no equal protection violation, ruling that Verizon had "failed to demonstrate that its total tax obligation is greater than its share of the common burden." *Id.* at 271 (quotation omitted).

We "vacate[d] the trial court's ruling and remand[ed] for application of the equal protection analysis set forth" in *In re Sandra H.*, 150 N.H. 634 (2004). *Id.* We directed the trial court that, in applying the rational basis test, it could "properly consider whether differences between the utilities justif[ied] varying treatment by the legislature." *Id.* Because "[t]he record [wa]s insufficiently developed with respect to how the various utilities are taxed," we "remand[ed] for further proceedings consistent with th[e] opinion." *Id.* Additionally, we reversed the trial court's partial grant of Verizon's abatement petitions because the trial court applied an erroneous standard, and, consequently, "remand[ed] for further proceedings consistent with th[e] opinion." *Id.* at 272.

On remand, both parties moved for summary judgment. The city argued that RSA 72:23, I, does not, on its face, violate equal protection. Verizon contended that the city "singled Verizon out as the sole entity occupying the public ways from which it[] seeks a real estate tax," and, therefore, violated its equal protection rights. Verizon also requested that the court grant its abatement petitions because the city's proposed tax was disproportionate. The trial court ruled that RSA 72:23, I, is constitutional on its face, but found that "the record [wa]s ... insufficiently clear to warrant entry of summary judgment for either party on" Verizon's as-applied challenge. The court also found that issues of fact remained with respect to Verizon's abatement petitions. After a bench trial, the trial court

determined that the city's taxation of only Verizon for its use and occupancy of public property under its pole licenses is unconstitutional because the city's reasons for taxing Verizon alone are not rationally related to any legitimate governmental interest. RSA 72:6, :23, I. Foreseeing an appeal, the trial court additionally granted Verizon's abatement petitions, finding that, "as of April 1, 1996, the market value of the public land used or occupied by Verizon for real estate tax purposes was $218,700," and the city's tax assessment of this land was disproportionate.

On appeal, the city argues that the trial court erred by: (1) failing to adhere to the scope of the remand in *Rochester II* by not confining its review of Verizon's equal protection challenge to whether RSA 72:23, I, is facially constitutional; (2) improperly ruling that as applied, RSA 72:23, I, violates Verizon's equal protection rights; (3) revisiting the disproportionality issue on remand; (4) failing to dismiss Verizon's abatement petitions; and (5) quashing the city's subpoena seeking testimony from Verizon's vice president for governmental relations as to Verizon's potential sale of its landlines.

We first address the equal protection issue. The city argues that the trial court failed to adhere to the scope of the remand in *Rochester II* when it addressed whether RSA 72:23, I, is unconstitutional as applied to Verizon. The city interprets *Rochester II* as remanding to the trial court solely for an analysis of whether RSA 72:23, I, on its face, violates the Equal Protection Clauses of the State and Federal Constitutions. Based upon this interpretation, the city argues that the trial court improperly heard additional evidence upon Verizon's as-applied equal protection challenge, and erred in finding an equal protection violation. Verizon counters that it has always challenged RSA 72:23, I, as applied, and the trial court properly considered additional evidence in assessing its equal protection argument.

In *Rochester II*, we stated that "Verizon argue[d] that RSA 72:23 creates an unconstitutional classification of taxpayers." *Rochester II*, 151 N.H. at 270. This language suggests that Verizon was challenging RSA 72:23 on its face. However, we noted that Verizon contended that "the city's proposed tax unconstitutionally *singles out* Verizon." *Id.* at 265-66 (emphasis added). It maintained that "the city has issued real estate tax assessments to Verizon, but not to the gas, cable and electric companies that use the public ways in a manner indistinguishable from Verizon's, thus violating its right to equal protection." *Id.* at 270. We thus understood that Verizon was also attacking RSA 72:23, I, as applied to Verizon. We did not rule upon either challenge in *Rochester II*. Rather, we vacated the trial court's ruling because we had recently clarified our equal protection

analysis in *In re Sandra H.*, and the trial court had not applied the rational basis test as articulated in that case in reviewing Verizon's claims. *Id.* at 270-71. We then remanded for further proceedings consistent with the opinion because the record, which included transcripts from the first bench trial, was insufficiently developed with respect to how the other utilities are taxed. *Id.* Contrary to the city's contention, we never suggested that upon remand the trial court was confined to addressing only whether RSA 72:23, I, is facially unconstitutional. Indeed, if Verizon had challenged RSA 72:23, I, on its face only, information concerning how the other utilities are taxed would have been irrelevant. Accordingly, the trial court properly interpreted *Rochester II* as requiring it to analyze RSA 72:23, I, both on its face and as applied to Verizon. *See* 5 C.J.S. *Appeal and Error* § 1136 (2007).

On remand, in ruling upon the parties' cross-motions for summary judgment, the trial court found that the record was "insufficiently clear" with respect to Verizon's as-applied challenge to warrant judgment for either party. It therefore denied the cross-motions and received additional evidence before ultimately ruling that as applied, RSA 72:23, I, violates Verizon's right to equal protection. Because we specifically informed the trial court that upon remand it could consider the differences between the utilities in applying the rational basis test, *Rochester II*, 151 N.H. at 270-71, and the record was "still insufficiently clear" with respect to how the utilities were taxed when the trial court ruled upon the summary judgment motions, the trial court did not err in receiving additional evidence upon this issue.

We now address the city's argument that the trial court erred in ruling that RSA 72:23, I, as applied, violates Verizon's equal protection rights. The city contends:

> Verizon's "as applied" challenge actually implicates property taxation pursuant to RSA 72:6, and RSA 72:23, I, is merely a vehicle through which the tax exemption, normally accorded to governmentally owned land, is abrogated[, and, therefore,] ... the remedy to Verizon's allegedly disparate property taxation is to challenge its property tax assessment[s] ... through ... petitions for abatement, ... not through an "as applied" assault on RSA 72:23, I.

Thus, the city argues that the trial court should not have applied the rational basis test, but, should instead have inquired into "whether [Verizon] is being asked to pay more than its just and fair proportion of the common tax burden." According to the city, "because ... Verizon has failed

to prove that its assessments were disproportionate ... [its] petitions for abatement ... must be dismissed."

The city erroneously conflates Verizon's equal protection challenge with its distinct disproportionality argument. In its equal protection challenge, Verizon is not arguing that it is paying more than its share of the common burden; that is, that "its property is assessed at a higher percentage of fair market value than the percentage at which property is generally assessed in the city." *Rochester II*, 151 N.H. at 272. Rather, it contends that the city has, without a rational basis, intentionally applied RSA 72:23, I, to only Verizon, even though other private utilities similarly use and occupy real estate on public ways. *See* N.H. CONST. pt. I, arts. 2, 10, 12, pt. II, art. 5; U.S. CONST. amend. XIV; *Cagan's, Inc. v. N.H. Dept. of Revenue Admin.*, 126 N.H. 239, 245-46 (1985); *cf. Appeal of Town of Bethlehem*, 154 N.H. 314, 322-25 (2006); *Opinion of the Justices (Mun. Tax Exemptions for Elec. Utility Personal Prop.)*, 144 N.H. 374, 383-84 (1999). Thus, pursuant to our directive in *Rochester II*, the trial court applied the correct test, that is, the rational basis test, in reviewing this equal protection argument. *Rochester II*, 151 N.H. at 271; *Estate of Robitaille v. N.H. Dept. of Revenue Admin.*, 149 N.H. 595, 596-97 (2003); *Cagan's Inc.*, 126 N.H. at 245-46.

With respect to the trial court's ultimate ruling that RSA 72:23, I, is unconstitutional as applied, Verizon correctly notes:

> The City does not contest the fact that it singled Verizon out from the other utilities as the sole utility against which it sought to exact a real estate tax based on the value of the land used and occupied in the public ways. Likewise, it does not contend that the trial court had no basis to find that its assertion of the tax against Verizon was unreasonable and arbitrary.

Instead, the city argues that the trial court misapprehended the facts surrounding the city's treatment of Verizon and other utilities. Specifically, the city contends that the testimony and evidence from both trials established that: "(1) both Verizon's and [Public Service Company of New Hampshire]'s 'pole licenses' were identically amended to include required language specified in RSA 72:23, I; (2) the cable TV company had no 'pole licenses' on March 28, 1996; and (3) the gas Company had no written agreements with the City." Consequently, "the City had amended all the 'pole licenses' it could through the authority of RSA 231:163."

The city improperly narrows the constitutional issue to a determination of whether it amended its pole licenses. First, the city ignores the plain language of RSA 72:23, I(b), which states that the statute applies to "leases and *other agreements*." (Emphasis added.) It further disregards

our prior holding in this case that the term "agreement" in RSA 72:23, I, means "'harmonious understanding,' or 'the act of agreeing or coming to a mutual arrangement.'" *Rochester I*, 144 N.H. at 121 (citation omitted). Simply because other utilities arguably may not have had the same "pole licenses" as Verizon does not mean they did not have "a mutual understanding and arrangement" with the city to use and occupy public property. *Id.* Second, as discussed above, Verizon challenges the city's assessment of real estate taxes to only Verizon for the public property used and occupied by its poles and wires. Thus, although the city may have amended all its existing pole licenses and/or other agreements, the relevant inquiry under Verizon's equal protection challenge is whether the city, without a rational basis, is singling out Verizon by not *imposing* this tax upon the other utilities.

We now conduct this inquiry. We first examine the issue under the State Constitution, relying upon federal opinions only for guidance. *Robitaille*, 149 N.H. at 596. Because the constitutionality of a tax is a matter of law, we review the trial court's decision *de novo. Id.*

"The equal protection clause protects [an entity] from state action which selects [it] out for discriminatory treatment by subjecting [it] to taxes not imposed on others of the same class." *Allegheny Pittsburgh Coal Co. v. County Comm'n of Webster Cty.*, 488 U.S. 336, 345 (1989) (quotation and citation omitted). As we discussed in *Rochester II*, "to determine whether Verizon's right to equal protection is being violated, we must apply the rational basis test." *Rochester II*, 151 N.H. at 270. Under this as-applied challenge, we determine whether the city's selective taxation of Verizon is rationally related to a legitimate state interest. *Id.*; *Allegheny Pittsburgh Coal*, 488 U.S. at 344.

The evidence in the record demonstrates that Verizon uses and occupies the public ways through its pole licenses in a manner indistinguishable from the gas, cable, and electric companies that use and occupy the public ways under "other agreements" with the city. As the trial court explained, each utility "supplies a public service to citizens over and under the roads and streets of Rochester. In order to do so, each must obtain Rochester's permission." Each utility also has an agreement or "harmonious understanding" with the city to use and occupy public ways: (1) the electric company has pole licenses; (2) the gas companies have consent from the city for their use and occupancy of the public ways, *see* RSA 231:184 (1993); and (3) the cable television company has a franchise agreement.

However, the city does not impose a real property tax upon the other utilities' indistinguishable use and occupation of the public ways. The city appears to argue that the gas and electric companies, unlike Verizon,

already pay this tax under RSA 72:8 (1991) (amended 1997). While RSA 72:8 allows the city to tax electric and gas companies' personal property, specifically, "structures, machinery, dynamos, apparatus, poles, wires, fixtures . . ., and pipe lines," it does not authorize the city to tax the companies' "use and occupation" of real property owned by the public. Moreover, the evidence demonstrates that the city does not in fact tax this "use and occupation" of public land. Accordingly, the city is selectively applying RSA 72:23, I, against Verizon.

■ There is no equal protection violation, however, if the city's selective taxation is reasonably related to a legitimate state interest. *Rochester II*, 151 N.H. at 270. Under this test, Verizon "has the burden to prove that the [selection] is arbitrary or without some reasonable justification," *id.* (citation omitted), and, as in the federal test, "to negative every conceivable basis which might support [the selection], whether or not the basis has a foundation in the record," *Cmty Res. for Justice, Inc. v. City of Manchester*, 154 N.H. 748, 761 (2007) (quotation and citation omitted). Here, the city offers, the record reveals, and we can conceive of, no rational reason for selectively imposing this tax upon Verizon, and not upon other utilities that use and occupy public property in the same manner as Verizon. Moreover, the record fails to indicate that any legitimate governmental interest is furthered by this disparate treatment. Accordingly, we reject the city's contention that the trial court erred in ruling that its selective application of RSA 72:23, I, to Verizon is discriminatory and violates our Equal Protection Clause.

The parties agree that the trial court struck Verizon's tax liability for the relevant years to remedy the city's unconstitutional conduct. The city disputes this remedy and argues that Verizon's tax should be "reduc[ed] to a level that is proportional to the level of taxation borne by other taxpayers in the taxing district." Verizon counters that "[m]erely reducing the tax payment Verizon owes would . . . perpetuate the City's unconstitutional scheme since Verizon would still be the only utility using and occupying the public ways to pay a real estate tax." We agree with Verizon.

■ "The right invoked [in this case] is that to equal treatment; and such treatment will be attained if either [the other utilities'] taxes are increased or [Verizon's] own reduced." *Iowa Des-Moines Nat. Bank v. Bennett*, 284 U.S. 239, 247 (1931); *see also Heckler v. Mathews*, 465 U.S. 728, 740 (1984); *cf. Smith v. N.H. Dept. of Revenue Admin.*, 141 N.H. 681, 697 (1997); *McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco*, 496 U.S. 18, 40-41 (1990). However, "[t]he Equal Protection Clause is not satisfied if [the city] does not itself remove the discrimination, but imposes on [the taxpayer] against whom the discrimination has been directed the burden

of seeking an upward revision of the taxes of other members of the class." *Allegheny Pittsburgh Coal*, 488 U.S. at 346 (citation omitted); *see also Bennett*, 284 U.S. at 247. "A taxpayer in this situation may not be remitted by the [city] to the remedy of seeking to have the assessments of the undervalued property raised." *Allegheny Pittsburgh Coal*, 488 U.S. at 346; *see also Bennett*, 284 U.S. at 247. Thus, contrary to the city's contention, when a tax violates the Equal Protection Clause, "simply ensuring that [it] is set at fair market value does not remedy the violation." *Tax Appeal of Cty. of Maui v. KM Hawaii, Inc.*, 915 P.2d 1349, 1357 (Haw. 1996) (citations omitted).

Because Verizon's abatement applications show that Verizon has not paid the taxes at issue, a refund is not now required. *See Bennett*, 284 U.S. at 247; *cf. McKesson Corp.*, 496 U.S. at 40-41. Accordingly, we affirm the trial court's ruling striking the tax against Verizon. Because we uphold the trial court's ruling that RSA 72:23, I, is unconstitutional as applied to Verizon, we do not reach the city's remaining arguments.

*Affirmed.*

BRODERICK, C.J., and DALIANIS, GALWAY and HICKS, JJ., concurred.