NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Merrimack
No. 2013-221


NORTHERN NEW ENGLAND TELEPHONE OPERATIONS, LLC D/B/A
FAIRPOINT COMMUNICATIONS - NNE

v.

CITY OF CONCORD

Argued: February 20, 2014
Opinion Issued: August 29, 2014


Devine, Millimet & Branch, PA, of Manchester (Daniel E. Will and Joshua M. Wyatt on the brief, and Mr. Will orally), for the petitioner.


City Solicitor's Office, of Concord (James W. Kennedy, city solicitor, and Danielle L. Pacik, deputy city solicitor, on the brief, and Mr. Kennedy orally), for the respondent.


HICKS, J. The respondent, the City of Concord (City), appeals rulings by the Superior Court (McNamara, J.) granting summary judgment in favor of the petitioner, Northern New England Telephone Operations, LLC d/b/a FairPoint Communications - NNE (FairPoint), in its equal protection challenge to the City's taxation of FairPoint's use and occupation of public property, and striking the tax levied against FairPoint. We vacate and remand.

The trial court found, or the record supports, the following facts. In order to provide telecommunications services throughout the City, FairPoint maintains poles, wires, cables, and other equipment within the City's public rights-of-way. For the 2000 through 2010 tax years, the City imposed a real estate tax upon FairPoint for its use and occupation of this public property (the right-of-way tax).[1] See RSA 72:6 (1991); RSA 72:23, I (Supp. 2000) (amended 2002, 2003, 2006, 2011).

Prior to 2010, the City did not impose a right-of-way tax upon Comcast, which utilizes the City's rights-of-way to provide cable services pursuant to a franchise agreement. The City began imposing the tax upon Comcast in 2010 in response to a ruling by the New Hampshire Board of Tax and Land Appeals (BTLA) that, notwithstanding the franchise agreement, Comcast was subject to the tax. Prior to 2008, the City did not impose the same tax upon Public Service of New Hampshire (PSNH) because it was unaware that PSNH had used and occupied the rights-of-way. Similarly, the City did not tax certain other users of its rights-of-way for their use and occupation of public property during the relevant tax years because it was not aware of their usage.

FairPoint brought an action challenging, in relevant part, the constitutionality of the City's right-of-way tax assessments against it for the 2000 through 2010 tax years. The parties filed cross-motions for summary judgment. In granting FairPoint's motion, and denying the City's motion, the trial court ruled, as an initial matter, that "intentionality" was not a required element of FairPoint's equal protection claim. Next, having implicitly found that the City had selectively taxed FairPoint, the court reasoned:

> Concord's decision not to tax others similarly situated was not an exercise of judgment; rather, it was due to a misunderstanding of the law with respect to Comcast, and a misunderstanding of the facts that other entities, such as PSNH and others[,] . . . were using Concord's right-of-way. There can be no serious argument that the City of Concord had a rational governmental interest in deciding not to tax entities based on its misunderstanding of the law or its lack of diligence in investigating the facts. Concord could therefore not have had a "rational reason for selectively imposing [a] tax upon" FairPoint.

(Quoting Verizon New England v. City of Rochester, 156 N.H. 624, 631 (2007).) The court concluded that "the City violated FairPoint's right to the equal protection of the laws under the State and Federal Constitutions," and that

---

[1] At oral argument, FairPoint conceded that the City did not tax it for the 1999 tax year. We therefore consider only the 2000 through 2010 tax years, and deem FairPoint's arguments regarding the 1999 tax year waived.

"the appropriate remedy is to strike [the] illegal tax." The court denied the City's subsequent motion to reconsider, and this appeal followed.

> When reviewing a trial court's grant of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party. If our review of the evidence does not reveal any genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, we will affirm the trial court's decision. We review the trial court's application of the law to the facts de novo.

Anderson v. Motorsports Holdings, 155 N.H. 491, 494 (2007) (quotation omitted).

On appeal, the City argues that the trial court erred in granting summary judgment in favor of FairPoint, and in striking the right-of-way tax levied against FairPoint.[2] Specifically, it argues that it neither "selectively impose[d]" the right-of-way tax upon FairPoint, nor "single[d] FairPoint out for taxation," for the relevant tax years. It contends that, "[t]o the extent that [it] failed to tax some entities that occupied the right-of-way" while taxing FairPoint, any such difference in treatment resulted from errors of judgment, which "do not show that [it] engaged in [an] arbitrary or otherwise intentional and deliberate scheme to tax FairPoint and not others similarly situated." Because "FairPoint's equal protection claim is without merit," the City argues, "FairPoint must be ordered to pay its assessed taxes owed to the City."

FairPoint argues that we "should affirm each of the trial court's rulings." Specifically, it argues that, for the relevant tax years, "[the City] committed the very equal protection violation adjudicated in prior cases by selectively taxing FairPoint, but not other entities that used and occupied [the City's] rights-of-way . . . in the same manner as FairPoint." It contends that, following our decision in Verizon New England v. City of Rochester, 156 N.H. 624 (Rochester III), "[i]t is now beyond dispute that a municipality's failure to assess a right-of-way tax against all entities that use and occupy the public rights-of-way violates the State Constitution's guarantee of equal protection." It further argues that discriminatory intent is not a required element for an equal protection claim based upon selective taxation, and that "[the City] cannot point to any New Hampshire authority on analogous facts that requires intent to discriminate . . . to establish an equal protection violation."

---

[2] To the extent the City also argues that the court erred in denying its motion for summary judgment, we deem that argument waived because the City failed to raise it in its notice of appeal. See Granite State Mgmt. & Res. v. City of Concord, 165 N.H. 277, 294 (2013).

In the alternative, it argues that the City "intentionally discriminated against FairPoint" by: (1) taxing only FairPoint for the 2000 tax year; (2) "deliberately cho[osing] not to assess a right of way tax against Comcast, meaning [the City] intended not to tax Comcast"; and (3) "fail[ing] to tax other right of way users, such as PSNH and [other] [a]ttachees, deliberately or through deliberate ignorance."

We first address FairPoint's equal protection claim under the State Constitution and rely upon federal law only to aid our analysis. State v. Ball, 124 N.H. 226, 231-33 (1983). Because constitutional challenges to the application of a tax raise questions of law, we review the trial court's decision de novo. Rochester III, 156 N.H. at 630.

We conclude that FairPoint's equal protection claim, like the one analyzed in Rochester III, is one of "selective enforcement," and not an equal protection challenge to the tax scheme itself for "impermissibly establish[ing] classifications and, therefore, treat[ing] similarly situated individuals in a different manner." State v. Hofland, 151 N.H. 322, 325, 326 (2004) (quotations omitted). Although it employs the term "classification," FairPoint challenges what it calls the City's "selective tax treatment," not the tax scheme itself. In any event, FairPoint has not shown that the tax "impermissibly established classifications and, therefore, treated similarly situated individuals in a different manner." Id. at 326 (quotation omitted). Accordingly, we analyze FairPoint's claim of "selective tax treatment" under the rational basis test set forth in Rochester III. See Rochester III, 156 N.H. at 630-31; see also Hofland, 151 N.H. at 325-26 (noting selective enforcement and classification as alternative means of establishing equal protection violation).

"The equal protection clause protects an entity from state action which selects it out for discriminatory treatment by subjecting it to taxes not imposed on others of the same class." Rochester III, 156 N.H. at 630 (quotation and brackets omitted). "[T]o determine whether [FairPoint's] right to equal protection is being violated, we must apply the rational basis test." Id. (quotation omitted). Under this test, we ask whether the City's taxation of FairPoint constituted selective taxation and, if so, whether the selection is rationally related to a legitimate state interest. See id.

To show "selective taxation," id., FairPoint "must show that the selective enforcement [of the tax] was a conscious, intentional discrimination," Anderson, 155 N.H. at 499 (emphasis added). Accordingly, in order to succeed on its claim of selective tax treatment, FairPoint must demonstrate "something more" than "mere errors of judgment by officials," Sunday Lake Iron Co. v. Wakefield, 247 U.S. 350, 353 (1918), or "that the enforcement was merely historically lax," Anderson, 155 N.H. at 499. In addition, FairPoint "has the burden to prove that the selection is arbitrary or without some reasonable justification and . . . to negative every conceivable basis which might support

4

the selection, whether or not the basis has a foundation in the record." Rochester III, 156 N.H. at 631 (quotations, citation, and brackets omitted).

As an initial matter, we note that FairPoint misconstrues our rational basis test, as articulated in Rochester III — a case that it insists "control[s]" this appeal. In Rochester III, we analyzed whether the City of Rochester's "taxation of only Verizon for its use and occupancy of public property," id. at 627, constituted "selective taxation . . . [not] rationally related to a legitimate state interest," id. at 630. Our initial determination in Rochester III — that Rochester "[was] selectively applying RSA 72:23, I, against Verizon," id. at 631 — necessarily followed from Rochester's failure to contest that it had "singled Verizon out" for taxation, id. at 629 (quotation omitted) — an allegation that, by its terms, implied a conscious decision to treat Verizon differently (i.e., "a conscious, intentional discrimination," Anderson, 155 N.H. at 499). Next, because "[Rochester] offer[ed], the record reveal[ed], and we [could] conceive of, no rational reason for selectively imposing this tax upon Verizon," we concluded that Rochester's "selective application" of the tax "[was] discriminatory and violat[ed] our Equal Protection Clause." Rochester III, 156 N.H. at 631.

FairPoint argues that, following Rochester III, "a municipality's failure to assess a right-of-way tax against all entities that use and occupy the public rights-of-way violates the State Constitution's guarantee of equal protection." (Emphasis added.) This argument overlooks the fact that, in order for us to rule that an entity has been "select[ed] . . . out for discriminatory treatment," id. at 630 (quotation omitted), the selection itself must be intentional. See Anderson, 155 N.H. at 499. Here, unlike in Rochester III, the City does not concede that it singled out FairPoint for taxation. Because FairPoint alleges that the City's enforcement of the right-of-way tax constitutes selective tax treatment, FairPoint "must show more than that the enforcement was merely historically lax." Id. "It is also clear that mere errors of judgment by officials will not support a claim of discrimination." Sunday Lake Iron Co., 247 U.S. at 353. "Instead, [FairPoint] must show that the selective enforcement was a conscious, intentional discrimination." Anderson, 155 N.H. at 499 (emphasis added); see also Sunday Lake Iron Co., 247 U.S. at 353.

FairPoint argues, to the contrary, that discriminatory intent is not a required element of its equal protection claim. It contends that an erroneous failure to tax one or more entities necessarily results in selective enforcement, and that such selection, because it was based merely upon an error, is arbitrary (i.e., without rational basis). To follow FairPoint's reasoning, an erroneous failure to tax even one entity constitutes selective taxation without a rational basis — and thus forms the basis for an equal protection claim — for every other similarly situated, taxed entity. FairPoint's counsel defended this hypothetical at oral argument, by insisting that, if ninety-nine out of 100 similarly situated homeowners were assessed a real estate tax, but one

5

homeowner was not taxed due to an error, each of the ninety-nine taxed homeowners would have a valid equal protection claim. We do not agree that such errors in taxation, without intentional selection, violate the equal protection rights of taxpayers. Cf. Appeal of Hardy, 154 N.H. 805, 814 (2007) ("To accept the [respondent's] argument would lead to absurd results.").

In the alternative, FairPoint argues that, even if it were required to demonstrate discriminatory intent to succeed on its equal protection claim, "the undisputed facts before the trial court demonstrated that [the City] intentionally discriminated against FairPoint." Because it ruled, erroneously, that FairPoint need not demonstrate discriminatory intent, the trial court did not explicitly address whether the City intentionally discriminated against FairPoint, and we decline to consider the issue in the first instance. Accordingly, we leave the issue to the trial court to address on remand. See State v. Pepin, 159 N.H. 310, 313 (2009).

Thus, because the trial court applied an erroneous legal standard in ruling that the City selectively imposed the tax upon FairPoint,[3] cf. Rochester III, 156 N.H. at 631, we vacate the trial court's rulings (1) granting summary judgment in favor of FairPoint and (2) striking the right-of-way tax imposed upon FairPoint, and remand for further proceedings consistent with this opinion.

The Federal Constitution offers FairPoint no greater protection than does the State Constitution under these circumstances. See Allegheny Pittsburgh Coal v. Webster County, 488 U.S. 336, 345-46 (1989) ("The equal protection clause protects the individual from state action which selects him out for discriminatory treatment by subjecting him to taxes not imposed on others of the same class. We have no doubt that petitioners have suffered from such intentional systematic undervaluation by state officials of comparable property . . . ." (emphasis added) (quotations, citation, and ellipsis omitted)); Rochester III, 156 N.H. at 630-31. Accordingly, we reach the same result under the Federal Constitution as we do under the State Constitution.

Vacated and remanded.

DALIANIS, C.J., and CONBOY, LYNN, and BASSETT, JJ., concurred.

---

[3] After implicitly finding that the City had selectively taxed FairPoint, the trial court proceeded to the second step of the rational basis test. The court concluded that "[t]here can be no serious argument that the City of Concord had a rational governmental interest in deciding not to tax entities based on its misunderstanding of the law or its lack of diligence in investigating the facts." Because we hold that its implicit finding of selective taxation was in error, we need not address the court's explicit finding that there was no rational basis for the selection. In addition, we need not address the parties' arguments regarding the appropriate remedy for an equal protection violation.

6